## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **MARK VITALIS,**       ) | |
|         ) | |
|       **Plaintiff,**      ) | |
|         ) | |
|       **v.**          ) | |
|         ) | **Civil Action No. 2005-0101** |
| **SUN CONSTRUCTORS, INC.;**   ) | |
| **HOVENA L.L.C., RICHARD "DOC"**   ) | |
| **LANGNER, and EXCEL GROUP, INC.,**   ) | |
|         ) | |
|       **Defendants.**     ) | |
| _____ ) | |

**Attorneys:**
**Gordon C. Rhea, Esq.,**
St. Thomas, U.S.V.I.
**Lee Rohn, Esq.,**
St. Croix, U.S.V.I.
      *For Respondent Lee A. Rohn, Esq.*

**Charles E. Engeman, Esq.,**
**David J. Cattie, Esq.,**
St. Thomas, U.S.V.I.
      *For Defendants Sun Constructors, Inc.,*
      *Richard Langner, and Excel Group, Inc.*

**Carl A. Beckstedt, III, Esq.,**
St. Croix, U.S.V.I.
      *For Hovensa L.L.C.*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER is before the Court on an Order to Show Cause (Dkt. No. 863) why Lee

A. Rohn, Esq. ("Atty. Rohn") should not be held in contempt based on the facts certified by

Magistrate Judge George W. Cannon Jr. under 28 U.S.C. § 636(e)(6)(B)(iii). (Dkt. No. 841). In

his Order, Magistrate Judge Cannon found that Atty. Rohn failed to comply with a validly served

subpoena duces tecum without adequate excuse. *Id.* at 3.

Following an evidentiary hearing and supplemental briefing by the parties, the Court finds that there is clear and convincing evidence that Atty. Rohn was properly served with a valid subpoena duces tecum; that she was aware of its terms; and that she failed to comply with that subpoena. The Court also finds that Atty. Rohn's excuse for her noncompliance is inadequate.

## I.    BACKGROUND

### A.    The Initial Contempt Order

In this protracted case, Plaintiff Mark Vitalis ("Vitalis") brought claims against multiple defendants asserting that he was discriminated against in employment based upon his race and national origin. (Dkt. No. 1). The case was vigorously litigated by all parties with Atty. Rohn representing Vitalis. The presiding Judge, the Honorable Timothy Savage,[1] entered summary judgment in favor of several Defendants, but held that Vitalis' federal and local discrimination claims against Defendant Sun Constructors, Inc. ("Sun Constructors") should proceed to trial. (Dkt. No. 400, 493). Following a three-day trial, a jury returned a verdict for Sun Constructors. (Dkt. Nos. 548-549). Vitalis appealed to the Third Circuit Court of Appeals—challenging the summary judgment rulings, the Court's evidentiary rulings before and during trial, as well as the "[a]ttitude of the Judge towards counsel." (Dkt. No. 550 at 1). All rulings were affirmed and the challenge to the Judge's demeanor was rejected by the Appellate Court. (Dkt. No. 838-1).[2]

---

[1] The Honorable Raymond L. Finch was the original judge in the instant case. In October 2009, Judge Finch recused himself following an *ex parte* communication between Atty. Rohn and one of his law clerks. (Dkt. Nos. 358, 360). The case was then reassigned to Judge Savage of the Eastern District of Pennsylvania. (Dkt. No. 362).

[2] On appeal, a panel of the Third Circuit Court of Appeals upheld Judge Savage's pretrial and trial evidentiary rulings, the jury instructions, and the jury's verdict. (Dkt. No. 838-1 at 5-10). The appellate panel also rejected Vitalis' claims that he was denied a fair trial because of the Judge's "hostility" toward Atty. Rohn. The panel found that while Judge Savage was "at times emphatic" with Atty. Rohn, "he was never disparaging" and noted that the Judge admonished all counsel in a display of "appropriate equanimity." *Id.* at 12.

The Judgment entered following the jury trial did not end the *Vitalis* litigation in the District Court. All Defendants filed motions seeking costs under Fed. R. Civ. P. 54(d)(1) and motions for attorneys' fees under federal and local statutes. (Dkt. Nos. 552-558). Vitalis requested that the Court stay any ruling on costs and attorneys' fees pending resolution of his appeal, but the Court denied this motion. (Dkt. No. 560, 571). Shortly thereafter, Vitalis filed a Motion to Recuse Judge Savage. Plaintiffs represented by Atty. Rohn in other cases over which Judge Savage presided (collectively "Plaintiffs") filed nearly identical motions in their respective cases. (Dkt. Nos. 579, 594). The Motions for Recusal focused on events before, during and after three trials over which Judge Savage presided and in which Atty. Rohn represented the Plaintiffs—*Wallace v. Kmart* (1:2002-cv-107),[3] *McNamara v. Kmart* (1:2008-cv-18),[4] and the instant case. (Dkt. No. 579).[5]

Attached to the Motions to Recuse, Atty. Rohn provided her own Affirmation alleging that various statements made, and actions taken, by Judge Savage reflected judicial bias. Nearly all of her allegations related to issues raised in the *McNamara* appeal and events occurring during the *Wallace* and *Vitalis* trials. (Dkt. No. 579-1). Also attached to the Motions were affidavits or declarations from several of Atty. Rohn's clients, her co-counsel, her personal friend of many

---

[3] Pursuant to Fed. R. Evid. 201(b)(2), the Court takes Judicial Notice that the *Wallace* personal injury case was tried in October 2009. (Case No. 02-cv-107, Dkt. Nos. 209-211). After a jury verdict for Defendant Kmart, Wallace filed a Motion for New Trial. (Dkt. No. 218). Wallace filed her Motion for Recusal several months after Judge Savage denied her Motion for New Trial and shortly after Defendant Kmart filed for costs and attorneys' fees. (Dkt. Nos. 241, 244).

[4] The *McNamara* personal injury case against Kmart was tried in March 2009 and resulted in a verdict for McNamara, Atty. Rohn's client. (Case No. 08-cv-18, Dkt. Nos. 103, 107). McNamara appealed the damage award as inadequate and challenged Judge Savage's exclusion of, and limits on, his expert witnesses' testimony, as well as the Judge's demeanor at trial. (Dkt. No. 108).

[5] Atty. Rohn had completed the *McNamara* and *Wallace* trials ten months and four months, respectively, before the *Vitalis* trial. However, she did not seek to recuse Judge Savage until the *Vitalis* trial ended in an adverse verdict for her client.

years, and two expert witnesses regularly retained by Atty. Rohn. Plaintiffs claimed that their combined allegations warranted Judge Savage's recusal from all of Atty. Rohn's cases. (Dkt. No. 579 at 1-2). Plaintiffs also attached two transcripts to the Motions to Recuse—a pretrial evidentiary hearing and the trial transcript from the *Vitalis* case. (Dkt. No. 579-1 at 3).

In response to the multiple recusal motions, Judge Savage consolidated six other cases with the instant matter to address the recusal issue. (Dkt. No. 594).[6] Defendants from some of the consolidated cases—primarily Kmart, Sun Constructors, and Sun Constructors' related entities (the "Sun Defendants")[7]— requested time to conduct discovery on Plaintiffs' allegations before responding to the Motions to Recuse. (Dkt. Nos. 584, 589).

In response to the discovery request, Plaintiffs conceded that discovery was appropriate and asserted that they also intended to conduct discovery, including deposing Judge Savage. (Dkt. No. 590 at 1-2). Plaintiffs challenged two aspects of Defendants' requested discovery. First, Plaintiffs objected to any questions during Atty. Rohn's proposed deposition about a criminal case pending against her in Superior Court. *Id.* at 2-4. Plaintiffs also objected to Defendants' purported intent to solicit affidavits from Virgin Islands attorneys who might not like Atty. Rohn. *Id.* at 4.

---

[6] The consolidated cases were *Wallace v. Kmart Corporation*, Case No. 1:2002-cv-0107; *Stanley, et al v. St. Croix Basic Services, Inc., et al.*, Case No. 1:2003-cv-0055; *Thomas v. Centennial Communications, et al.*, Case No. 1:2003-0163; *Vitalis v. Sun Constructors, Inc., et al.*, Case No. 1:2005-cv-0101; *Canton v. Kmart Corporation*, Case No. 1:2005-cv-0143; *Ragguette v. Premier Wines & Spirits, Ltd.,* 1:2006-cv-173; and *Alexis v. Hovensa LLC, et al.*, Case No. 1:2007-cv-0091. (Dkt. No. 594). All but two of the cases—*Thomas* and *Alexis*—had been resolved on the merits by trial, summary judgment, or settlement. Those which had been resolved, however, were scheduled for hearings on post-judgment motions.

[7] Vitalis also named Excel Group, Inc. ("Excel") and Richard Langner as Defendants in his case. Langner was a supervisor for Sun Constructors allegedly involved in various discriminatory actions against Vitalis. (Dkt. No 1 at 2-3). Vitalis later added Excel as a defendant, alleging that Sun Constructors was a subsidiary of Excel and that Excel was responsible for Sun Constructor's discriminatory acts. (Dkt. No. 143-2 at 2). Judge Savage granted summary judgment in favor of Excel and Langner as to all of Vitalis' claims. (Dkt. No. 493).

In response, the Sun Defendants challenged Plaintiffs' need for discovery, arguing that the recusal motions should be sufficient to stand on their own. (Dkt. No. 591 at 1-2). The Sun Defendants also asserted that Atty. Rohn placed her personal credibility "front and center," and therefore they were entitled to explore her credibility. *Id.* Finally, the Sun Defendants argued that deposing federal judges was contrary to well-established legal principles. *Id.*

On July 7, 2010, Judge Savage issued an Order establishing deadlines for Defendants to complete recusal discovery and to file their responses to Plaintiffs' motions. The same Order scheduled Atty. Rohn for a video-taped deposition to be taken by Defendants before the Magistrate Judge, with the restriction that Defendants could not question Atty. Rohn about her pending criminal charge. (Dkt. No. 595 at ¶¶ 3-4). The Order was silent regarding Plaintiffs' request for discovery.

On the same day, Judge Savage issued an Order, *sua sponte,* citing Fed. R. Civ. P. 11. (Dkt. No. 596). The Order directed Plaintiffs and Atty. Rohn to provide by July 16, 2010, the names and contact information for (1) each person they claimed had knowledge of the facts alleged in the recusal motions; and (2) each person contacted by Atty. Rohn's office to provide information supporting the motions, regardless of that person's cooperation. *Id.*

On July 15, 2010, the Sun Defendants filed a Notice of Deposition and Subpoena Duces Tecum rescheduling Atty. Rohn's video-taped deposition for August 12, 2010 which Atty. Rohn received through an ECF filing. (Dkt. 606 at 1-2; 649-1 at 18-20). Atty. Rohn also was personally served with the subpoena duces tecum. (Dkt. No. 649-1 at 18-20). The subpoena directed Atty.

Rohn to bring to the deposition any documents that fell within nine categories itemized on a list attached to the subpoena. (Dkt. No. 606-1 at 3).[8]

At about the same time, Kmart—a defendant in two of the consolidated cases—served written interrogatories and requests for documents on Atty. Rohn. (Dkt. No. 611). Kmart also filed a motion seeking a shortened response time for the discovery requests in order to obtain the responses before Atty. Rohn's deposition. (Dkt. No. 610). In an Order dated August 2, 2010 ("the August 2nd Order"), the Court provided a schedule directing Plaintiffs to serve their responses to Kmart's Request for Production of Documents by August 9, 2010. (Dkt. No. 613). The August 2nd Order also required Plaintiffs to file objections to any specific document request and submit any withheld documents to the Court by the same date so the Court could rule on the objections. *Id.* at 1-2.

On August 6, 2010, the Third Circuit Court of Appeals docketed Plaintiffs' Petition for Writ of Mandamus ("Mandamus Petition"). (Third Cir. Case No. 10-3345, Doc. 003110243424, at 1-2).[9] In the Mandamus Petition, Plaintiffs requested that the Appellate Court vacate the District

---

[8] The categories of documents requested were: (1) Orders admonishing Atty. Rohn or her firm for misrepresenting the law or facts; (2) documents within the last three years where counsel had accused Atty. Rohn of misrepresenting the law or facts; (3) all correspondence with any person who submitted or was asked to submit declarations for the motions to recuse; (4) documents relating to any remuneration paid in the prior three years by the Rohn firm to any person submitting a recusal declaration; (5) any documents within the prior three years in which the Rohn firm sought to recuse any judge, have a case reassigned to another judge, or alleged that any judge had a personal bias against them; (6) all drafts of any declarations/affirmations submitted to any person relating to the instant motion to recuse; (7) all communications within the last three years related to Judge Savage or any motions to recuse; (8) all recordings of any statements made by or attributed to Judge Savage; and (9) a privilege log listing all responsive documents to which Atty. Rohn asserted a privilege claim. (Dkt. No. 606-1).

[9] The Mandamus Petition also included Petitioner Cora Bergan, Plaintiff in *Bergan v. Kmart Corp.* (Case No. 1:2007-cv-0120). Bergan was represented by Atty. Rohn and her case was reassigned to Judge Savage in June 2010. (07-cv-0120, Dkt. No. 89-90).

Court's Order granting Defendants recusal discovery while denying Plaintiffs' request for the same. *Id.* at 25. Plaintiffs also asserted that the District Court's Orders improperly compelled disclosure of information that was irrelevant or protected by the attorney-client privilege or the work-product doctrine. *Id.* at 47.[10] Additionally, Plaintiffs asked the Appellate Court to direct that all discovery issues be referred to a Magistrate Judge as was "normal District of [the] Virgin Islands discovery practice." *Id.* at 56-57. Finally, Plaintiffs objected to the Order directing that Atty. Rohn be deposed, claiming that there was no reasonable basis to depose her. *Id.* at 59-60.

On August 5, 2010, Plaintiffs filed in the District Court an "Emergency Motion to Stay Consolidated Discovery" pending the Third Circuit's ruling on their Mandamus Petition. (Dkt. No. 614). The same omnibus filing also included a "Motion to Reconsider Order Granting Expedited Discovery and for Protective Order" ("Motion for Protective Order"). *Id.* In the Motion for Protective Order, Plaintiffs challenged the August 2nd Order requiring expedited discovery by asserting that Kmart's discovery requests—interrogatories and document requests—sought irrelevant and privileged materials. *Id.* at 4-5. In the same motion, Plaintiffs also objected to the Sun Defendants' subpoena claiming that the documents requested were irrelevant and/or sought attorney-client and work-product information. *Id.* at 6, 11-16. Finally, Plaintiffs asserted that all the discovery requests, coupled with the August 2nd Order expediting discovery, made the discovery unduly burdensome and harassing. *Id.* at 16-19.[11]

---

[10] The "work-product" information specifically mentioned in the Mandamus Petition was the Court's directive that Plaintiffs disclose the identity of persons that Atty. Rohn or her firm interviewed, or from whom they sought affidavits or declarations relating to the recusal motions. (Case No. 10-3345, Doc. 003110243424 at 50-52).

[11] Plaintiffs asserted that Atty. Rohn's files were voluminous and that each document in those records had to be individually reviewed to determine whether it was relevant and/or privileged. *Id.* at 614. In addition, they claimed that evidence of her credibility would be improper character

Judge Savage denied the Motion to Stay and Motion for Protective Order on August 6, 2010 ("August 6th Order") (Dkt. No. 615). While denying the motion, however, the Court limited discovery to document requests and depositions. The Court also held that any document request could seek only the identities of persons with knowledge and "documents bearing on the factual allegations in the motions for recusal." The Order further directed that all documents were to be produced "in accordance with the Order of August 2, 2010." *Id.* at 2.

Three days later, on August 9, 2010, Plaintiffs filed a motion with the Third Circuit in the Mandamus case. (Case No. 10-3345, Doc. 003110245283). The motion asked the Appellate Court to stay discovery in the District Court until the Appellate Court ruled on the Mandamus Petition. *Id.* at 3-19. The day before Atty. Rohn's scheduled deposition, the Third Circuit denied Plaintiffs' Motion to Stay Discovery. (Case No. 10-3345, Doc. 003110248528).[12]

Atty. Rohn's deposition was taken on August 12, 2010. (Dkt. No. 649-1 through 649-5).[13] During her deposition, Atty. Rohn admitted she was served with the Sun Defendants' subpoena duces tecum by ECF as well as personally. (Rohn Depo. Trans., pp. 18-20). Atty. Rohn further

_____

evidence and inadmissible at any hearing, and therefore, any credibility evidence was not relevant. (Dkt. No. 164 at 18-19).

[12] The day before Atty. Rohn's deposition, another case—*James-Steele v. Ford Motor Company*, 1:2004-cv-0123—was added to the consolidated cases. (Case No. 04-cv-123, Dkt. No. 290). Because of the other Plaintiffs' Motions to Recuse Judge Savage, Ford requested that its trial—scheduled before Judge Savage in June 2010—be continued because members of Atty. Rohn's firm served as local counsel. Judge Savage granted the continuance. (04-cv-0123, Dkt. Nos. 243, 277, 281). Ms. James-Steele, through Atty. Rohn, then filed a "Motion to Reassign" the case to another judge. (04-cv-0123, Dkt. Nos. 286-87). Defendant Ford also requested to join in the recusal discovery. (04-cv-0123, Dkt. No. 289; 05-cv-101, Dkt. No. 646).

[13] Atty. Rohn's deposition transcript was attached to her response to Defendants' Motion for Contempt and was split into five separate attachments. (Dkt. Nos. 649-1 through 649-5). For the sake of clarity, the references to this deposition will be to the actual deposition transcript pages and cited as "Rohn Depo. Trans., p. ___."

testified that she did not bring any documents in response to the subpoena. *Id.* at 18. She stated that based upon the August 6th Order, the documents requested in the subpoena were not relevant. In her view, the only issue was whether Judge Savage lacked impartiality in her cases, and the documents requested were not relevant to that limited issue. *Id.* at 18-19. While also describing the August 6th Order as "cryptic," Atty. Rohn maintained that, under that Order, the documents requested were not relevant. (Rohn Depo. Trans., p. 108).

Atty. Rohn also testified during her deposition about her efforts to determine if documents responsive to the subpoena existed. First, she testified that she asked her office manager to "inquire" if anyone in the office remembered whether the firm ever had been sanctioned or admonished by a court or accused of making misrepresentations. Otherwise, Atty. Rohn testified that she did not attempt to locate any documents responsive to the subpoena because it was too burdensome. (Rohn Depo. Trans., pp. 90, 109-115). Atty. Rohn also admitted that she did not file either a motion to quash or personal objections to the subpoena. Instead, she "objected" to the subpoena through her clients' "Motion for Protective Order." *Id.* at 108. Atty. Rohn also agreed she did not submit any objections or privileged documents to the Court for an *in camera* review prior to her deposition. *Id.*

On the day after Atty. Rohn's deposition, the Third Circuit issued an Order largely denying Plaintiffs' Mandamus Petition. (Dkt. No. 622). The Order denied all claims for relief without prejudice except that it directed Judge Savage "to refer all discovery matters relating to the issue of disqualification to a U.S. Magistrate Judge." *Id.* Judge Savage issued that referral order on August 17, 2010. (Dkt. No. 625).

Six days after Atty. Rohn's deposition, the Sun Defendants filed the instant Motion for Contempt based upon Atty. Rohn's failure to comply with the subpoena duces tecum. (Dkt. No.

627). The Sun Defendants argued that, despite the Orders of the District Court and Third Circuit denying Plaintiffs' motions, Atty. Rohn made little or no effort to determine if any documents responsive to the subpoena existed and produced no documents. *Id.* at 2-3. The Sun Defendants further argued that Atty. Rohn's actions were contemptuous under Rule 45(e) because she never filed objections, did not seek to quash the subpoena, and never submitted any privileged documents for *in camera* review under the August 6th Order. *Id.*

Atty. Rohn responded to the motion asserting that she should not be held in contempt because:

> (1) [She] complied with the subpoena as modified by the Court's August 6 Protective Order limiting discovery . . . ; (2) the August 2 Discovery Order and August 6 Protective Order . . . did not impose any obligations on Attorney Rohn in responding to Sun's subpoena, or, alternatively, the obligations were too ambiguous to be enforceable through contempt; and (3) Attorney Rohn may not be held in contempt for making objections or for failing to comply with a subpoena that is impossible to comply with because it [was] so overbroad and unduly burdensome.

(Dkt. No. 649 at 2). Referring to the August 6th Order as a "Protective Order," Atty. Rohn asserted that the Order held that the documents requested by the subpoena were irrelevant. Atty. Rohn also stated that the August 6th Order was "cryptic and confusing" due to its reference to the August 2nd Order requiring submission of privileged documents to the Court for *in camera* inspection. *Id.* at 6-7. She also argued that she could not be held in contempt for making and preserving objections to the subpoena during her deposition, asserting that neither the August 2nd or August 6th Orders addressed her individual obligations in responding to the subpoena. *Id.* at 14-15.

After hearing arguments, Magistrate Judge Cannon issued an Order dated August 25, 2010 finding that Atty. Rohn's interpretation of the August 6th Order was unreasonable and holding her in contempt. (Dkt No. 658 at 3). In that Order, the Magistrate Judge also directed Atty. Rohn to "deliver [the subpoenaed] *documents* to counsel . . . [by] September 7, 2010;" to provide a detailed

privilege log listing any privileged documents withheld; and to present those privileged documents to the Magistrate Judge for *in camera* review. *Id.* at 3-4 (emphasis added). Subsequently, the Magistrate Judge ordered Atty. Rohn to compensate the Sun Defendants for the attorneys' fees incurred in filing the Motion for Contempt in the amount of $1,475.00. (Dkt. Nos. 759).

Atty. Rohn appealed the Magistrate Judge's Contempt Order to the District Court and asserted that Judge Savage was barred from reviewing that appeal. (Dkt. No. 673). She also filed a Motion to Stay the Contempt Order pending her appeal to the District Court, which the Magistrate Judge denied on September 13, 2010. (Dkt. Nos. 675, 697). The only additional recusal discovery provided during that time was a 14-page string of emails provided by Plaintiff in the *James-Steele* case in response to the request for communications about Judge Savage. (Dkt. No. 689).

After her motion to stay the Contempt Order was denied, Atty. Rohn filed a "Response To Subpoena Duces Tecum." (Dkt. No. 706). In this Response, Atty. Rohn asserted that there were no documents responsive to two categories of items requested and objected to the remaining requests as irrelevant and overly broad. She also produced no privilege log, reporting that no privileged documents existed. *Id.* at 1-2. Ultimately, the District Court declined to reassign the appeal, and Judge Savage upheld the Magistrate Judge's Contempt Order without holding an evidentiary hearing. (Dkt. No. 736); *see Wallace v. Kmart Corp.*, 821 F. Supp. 2d 763 (D.V.I. 2011).

Atty. Rohn then appealed the Contempt Order to the Third Circuit. (Dkt. No. 767). The Appellate Court reversed the Order, finding that neither the Magistrate Judge nor the District Judge complied with 28 U.S.C. § 636(e), which limited the Magistrate Judge to certifying facts relating to any civil contempt and required the District Court to make a *de novo* determination of whether

contempt was proven. *Wallace v. Kmart Corporation*, 687 F.3d 86, 92 (3d Cir. 2012). The case was remanded so that "the Magistrate Judge and District Judge can proceed in accordance" with the statute. *Id.* The Third Circuit rejected Atty. Rohn's request to reverse the Contempt Order on the merits. *Id.* at 92 n.12.

### B.      Post-Remand Proceedings

Following the Third Circuit's remand, the Magistrate Judge vacated his prior Contempt Order and issued a new Order certifying to the District Court his factual findings that Atty. Rohn's conduct amounted to contempt. (Dkt. No. 841). The case was then reassigned to the undersigned judge. (Dkt. No. 842). Subsequently, this Court held a *de novo* evidentiary hearing on the contempt issue. (Dkt. No. 884).

During the evidentiary hearing, Atty. Rohn testified that she received the Sun Defendants' subpoena duces tecum by ECF and personal service, but that she did not produce any documents at her deposition. (Dkt. No. 889 at 68-70). She further testified that she did not—as an individual— file a motion to quash the subpoena, stating that the Motion for Protective Order filed on behalf of her clients served as her attempt to limit the subpoena's document requests. *Id.* at 69-70, 75-76.

In explaining her failure to bring any documents to her deposition, Atty. Rohn made essentially two separate claims. First, she testified that the August 6th Order limited what she was obligated to produce at the deposition, apparently based on her determination that none of the requested documents had any "bearing on" the allegations in the recusal motions. *Id.* at 75-80, 96, 120. She also testified that she reviewed the August 6th Order with other attorneys, and they agreed with her interpretation that the subpoenaed documents were not relevant to the factual allegations in the recusal motions. *Id.* at 167-68, 184-85. Atty. Rohn admitted that she did not withdraw Plaintiffs' Mandamus action nor did she advise the Third Circuit that she believed the August 6th

Order—which she claimed during her deposition rendered the subpoenaed documents irrelevant—granted part of the relief Plaintiffs were seeking from the Appellate Court. *Id.* at 122-23.

Second, Atty. Rohn testified and argued in her post-hearing written submissions that the August 6th Order was "not as clear as it could have been," and that she interpreted the Order's language to hold that the subpoenaed documents were not relevant. (Dkt. No 889 at 78-80). Atty. Rohn stated that she did not seek clarification of the Order's language from Judge Savage. *Id.* at 135.

During the evidentiary hearing, Atty. Rohn also testified that between July 15, 2010—when the notice of subpoena duces tecum was filed—and the filing of the August 6th Order, she (1) confirmed that she had no recordings attributed to Judge Savage; and (2) asked her office manager to consult with her staff to determine if any of them recalled any motion to recuse or similar documents filed in the last three years. She testified that she took no other action to search for any other documents responsive to the subpoena. *Id.* at 71-74. Atty. Rohn testified, however, that her firm produced "about 600 pages of documents" responsive to Kmart's document requests,[14] and attached "hundreds of pages" to the Motions to Recuse. *Id.* at 74-75.[15] She also testified that her firm searched for emails referencing Judge Savage and found none. *Id.* at 95. Atty. Rohn further testified that neither she nor her staff completed a computer search or a physical search for any other documents that might be responsive to any other requests included in the

---

[14] The "approximately 600 pages" produced to Kmart—other than the Response and Objections asserted—consisted of: (1) the *McNamara* trial transcript; and (2) a 14-page CM/ECF activity list from an unrelated case that Atty. Rohn litigated before Judge Savage. (Hearing Exhibit 5). Atty. Rohn's Supplemental Response to Kmart's document request included the *Wallace* trial transcript, which consisted of 605 pages. (Hearing Exhibit 7).

[15] The documents attached to Vitalis' Motion to Recuse included transcripts from one pretrial hearing and the trial transcript in *Vitalis*. These transcripts constituted about 760 pages (95%) of the Motion's attachments. (Dkt. Nos. 579-2 through 579-5, 579-11 through 579-13).

subpoena, except for checking on a prior Motion to Recuse filed against Judge Thomas Moore. *Id.* at 151-58.[16]

At the conclusion of the hearing and upon Atty. Rohn's request, the Court allowed supplemental briefing on the issues raised during the contempt hearing. (Dkt. No. 886). In her initial "Supplemental Brief in Further Opposition to Sun's Contempt Motion" (Dkt. No. 891), Atty. Rohn asserts that the August 6th Order issued by Judge Savage was not clear and that she, in good faith, believed the Order relieved her of any obligation to produce documents under the subpoena. *Id.* at 9-10. In addition, she asserts for the first time that contempt sanctions are inappropriate because Defendants did not file a motion to compel before seeking contempt relief, nor did Defendants seek an additional Order of contempt *after* she filed her belated response to the subpoena in September 2010. *Id.* at 1-9. In her final brief "responding" to that of Defendants, Atty. Rohn raises another new argument: that the contempt motion is moot because the Court had issued a final order denying the recusal motions in 2011; she did not appeal from that Order; and the recusal matter has been fully resolved. (Dkt. No. 894 at 3-9).

## II.    APPLICABLE LEGAL PRINCIPLES

By statute, the magistrate judge certifies the facts relating to acts constituting civil contempt to the district court. The district court must then issue an order requiring the respondent to appear to "show cause why that person should not be adjudged in contempt by reason of the facts so certified." 28 U.S.C. § 636(e)(6)(B)(iii). The district judge hears the evidence *de novo* and

---

[16] *See In re Recusal Motion*, 118 F. Supp. 2d 622 (D.V.I. 2000). In this case, Atty. Rohn filed motions in various cases assigned to Judge Thomas Moore claiming he held a personal bias after he imposed sanctions against her in *Saldana v. Kmart Corp.* 84 F. Supp. 2d 629 (D.V.I. 1999), *aff'd in part and rev'd in part* 260 F.3d 228 (3d Cir. 2001). After reviewing all the complaints made by Atty. Rohn, Judge Moore determined that no objective person knowing the relevant facts would consider him biased. *In re Recusal Motion*, 118 F. Supp. 2d at 625-44.

must determine if contempt has been proven; whether punishment is warranted; and the appropriate punishment, if contempt is found. *Id.*

The magistrate judge's certification establishes only that a prima facie case of contempt has been shown. *Wasserman v. Faulkner Cadillac, Inc.*, 2019 WL 6251230, at *1 (E.D. Pa. Nov. 22, 2019). It is the district court's responsibility to hold a *de novo* hearing to determine the issues of fact and make any credibility determinations that are necessary to resolve the contempt issue. *Wallace v. Kmart Corporation*, 687 F.3d at 91; *see also Stream Companies, Inc. v. Windward Advertising*, 2013 WL 3761281, at *13 n.21 (E.D. Pa. July 17, 2013) (district court must make the credibility determinations relevant to any contempt findings and whether substantial compliance has occurred).

### A.   Civil Contempt

The matter before the Court is whether the evidence meets the requirements to hold Atty. Rohn in civil contempt. To establish civil contempt, the Court must find "(1) that a valid order of court existed; (2) that the [respondent] had knowledge of the order; and (3) that the [respondent] disobeyed the order." *In re AGR Premier Consulting, Inc.*, 550 F. App'x 115, 122-23 (3d Cir. 2014); *see also In re Prosser*, 2017 WL 721991, at *9 (D.V.I. Feb. 23, 2017). These elements must be established by clear and convincing evidence, and ambiguities must be resolved in favor of the party charged with contempt. *Int'l Financial Co., LLC v. Jabali-Jeter*, 2019 WL 2268961, at *11 (E.D. Pa. May 28, 2019) (quoting *United States ex rel. Salvino Steel & Iron Works, Inc. v. Safeco Ins. Co. of Am.*, 181 F. App'x 247, 250 (3d Cir. 2006)).

Courts should hesitate to adjudge a party in civil contempt when there is reason to doubt the wrongfulness of the conduct; however, the party's behavior in violating the order need not be willful. *Hill v. Fisher*, 2019 WL 4691252, at *3 (M.D. Pa. Sept. 25, 2019) (no contempt where

evidence presented proved that court order was not received at the time of first "violation," but contempt found for the second violation which occurred after the order's delivery) (citing *F.T.C. v. Lane-Labs USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010)); *see also Food Lion, Inc. v. United Food & Comm. Workers Int'l Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997) ("intent of the recalcitrant party is irrelevant" because civil contempt is a remedial sanction). Thus, a party's disobedience of a valid court order need not be subjectively "intentional" in order to support a civil contempt finding. *See, e.g., Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148-49 (3d Cir. 1994) (intent and willfulness are relevant only to the extent of the sanction imposed). In other words "good faith" is no defense in determining civil contempt. *AGR Premier*, 550 F. App'x at 123 (citing *FTC v. Lane Labs-USA, Inc.*, 624 F.3d at 582)).

The question of the "intent" required for a civil contempt finding was clarified by the United States Supreme Court in *Taggert v. Lorenzen*, 139 S. Ct. 1795 (2019). In *Taggart*, the Respondent was accused of attempting to collect a debt that had been discharged in a bankruptcy order. *Id.* at 1799. In evaluating the Bankruptcy Code and its origins in equity, the Court found that civil contempt sanctions could be imposed "when there is no *objectively* reasonable basis for concluding that the [Respondent's] conduct might be lawful under the discharge order." (emphasis added). *Id.* at 1801. The Court held that the applicable standard was an objective one in non-bankruptcy cases as well, and that any party's subjective belief that they complied with the Order did not "insulate her from civil contempt if that belief was objectively unreasonable." *Id.* at 1803 (emphasis added) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). The Court continued by finding that subjective intent was relevant, if at all, only in determining appropriate sanctions. *Id.*

### B.    Rule 45 Standards

Because Atty. Rohn was a third-party to the underlying litigation, the Court also must consider the legal standards under Fed. R. Civ. Proc. 45. Rule 45 allows a non-party to be served with a subpoena to testify and/or produce records relevant to a pending case involving others. Fed. R. Civ. P. 45(a). Once a nonparty has been served with a Rule 45 subpoena seeking documents, the nonparty must comply unless (1) the nonparty files a timely objection to producing any or all of the requested documents, or (2) the nonparty files a timely motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(d)(3). *See In re Domestic Drywall Antitrust Litigation*, 300 F.R.D. 234, 238-39 (E.D. Pa. 2014). A nonparty cannot be held in contempt "as long as [she] took all reasonable steps to comply." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1324 (3d Cir. 1995) ("*Harris I*").

If a deponent fails to seek court protection or fails to comply with a subpoena duces tecum, Rule 45(g) states that the Court may hold that person in contempt if they lack an "adequate excuse" for failing to obey. *See Baez v. City of Schenectady*, 2017 WL 4990646, at *2 (N.D.N.Y. Nov. 1, 2017) (failure of non-party witness to attend deposition pursuant to a Rule 45 subpoena or respond to an Order to show cause establishes lack of an adequate excuse). Once the complaining party establishes by clear and convincing evidence that the subpoenaed party violated a subpoena, the burden shifts to the subpoenaed party to offer proof of an adequate excuse, which requires more than the mere assertion of an inability to comply. *Id.*; *see also Cupolex Building Systems, USA, LLC v. Varsity Slab Solutions*, 2018 WL 4922362, at *3 (D.N.J. July 6, 2018) (same). The decision to hold a non-party in contempt under Rule 45 is within the sound discretion of the trial court. *Harris v. City of Philadelphia*, 47 F.3d 1342, 1349 (3d Cir. 1995) ("*Harris III*"); *see also Jones*

*v. Thomas Jefferson University Hospitals, Inc.*, 2015 WL 1255997, at *1 (E.D. Pa. March 19, 2015) (imposition of contempt is discretionary).

As a remedy for a finding of contempt, the court may impose different types of relief. "[T]he sanctions for civil contempt serve two purposes: to coerce future compliance and to remedy any harm past noncompliance caused the other party." *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947). Coercive sanctions are designed to enforce the prior court order. *See, e.g., Shmuely v. Transdermal Specialties, Inc.*, 2019 WL 3002942, at *4 (E.D. Pa. July 10, 2019) (order announces penalties the court will impose if the party deviates from an injunction's requirements). In addition, civil contempt sanctions can be imposed to compensate the party injured by the contemptuous actor's violation. *Secretary of Labor v. Altor Inc.*, 783 F. App'x 168, 171 (3d Cir. 2019). A compensatory award seeks "to make reparation to the injured party and restore the parties to the position they would have held had the [judicial order] been obeyed." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (citation omitted).

## III.   DISCUSSION

Atty. Rohn argues that a finding of contempt is inappropriate because (1) the August 6th Order was ambiguous; (2) the Sun Defendants failed to file a motion to compel before seeking contempt relief and did not seek an additional Order of Contempt after she filed her belated responses to the subpoena; and (3) the contempt motion is moot. The Court will address each argument in turn.

### A.   The Alleged Ambiguity of the August 6th Order

Atty. Rohn does not dispute that she received Sun Constructors' subpoena duces tecum and that it constituted a valid court order. The core dispute between the parties is whether Atty. Rohn violated the Order, and whether she has shown an adequate excuse for any violation. In both

her pre-remand and post-remand written filings, Atty. Rohn asserts that the Court's August 6th Order—issued in response to Plaintiffs' "Motion for Reconsideration and for Protective Order"—was "ambiguous." She states that the Order was unclear as to what her obligations were when responding to the Sun Defendants' subpoena. She further argues that because of this lack of clarity, she could not have "violated" the subpoena or the August 6th Order. She also asserts that the ambiguity creates an "adequate excuse" for any failure by her to comply with the Court's Orders. (Dkt. Nos. 649 at 2; 891 at 9-11).

The Third Circuit has recognized that an Order must be sufficiently clear in its requirements to support a finding of contempt because "'a person will not be held in contempt . . . unless the order has given him fair warning.'" *Harris III*, 47 F.3d at 1349 (quoting *United States v. Christie Indus., Inc.*, 465 F.2d 1002, 1006 (3d Cir. 1972)). Alleged contemnors are entitled to the benefit of the "'long standing salutary rule in contempt cases that ambiguities and omissions in orders redound to the benefit of the person charged with the contempt.'" *Robin Woods Inc.*, 28 F.3d at 399 (citation omitted). Thus, an alleged contemnor cannot be punished for actions or omissions when there is a lack of certainty as to what the Order prohibited or directed. *See In re Prosser*, 2017 WL 721991, at *16. To address this argument, the Court must consider whether the August 6th Order was "ambiguous."

When interpreting any court order, "it is necessary to examine the context of the order." *In re Manley Toys Limited*, 2019 WL 3229301, at *5 (D.N.J. July 18, 2019) (interpretation of modified Stay Order must be read in the context of the relief sought in the parties' motion and the actual relief granted); *see also Haddonbrook Associates v. General Elec. Co*., 2009 WL 704380, at *5 (D.N.J. March 13, 2009) (orders are not construed in a vacuum but are interpreted in the light

of the "surrounding circumstances" leading to their issuance). When the August 6th Order is considered in context, Atty. Rohn's ambiguity arguments fall woefully short.

The context of the August 6th Order necessarily includes the events leading up to that Order. After Judge Savage issued the August 2nd Order shortening the time for Plaintiffs to respond to Kmart's document requests and Plaintiffs filed a Mandamus Petition challenging both Kmart's discovery and the Sun Defendants' subpoena duces tecum, Plaintiffs filed a three-part omnibus Motion in the District Court: (1) a Motion to Stay Discovery pending the Mandamus Petition; (2) a Motion to Reconsider the August 2nd Order; and (3) a Motion for Protective Order, challenging both Kmart's discovery and the Sun Defendants' subpoena. (Dkt. No. 614). This combined motion was the first time that Plaintiffs challenged the Sun Defendants' subpoena in the District Court. *Id.* at 5-6.[17]

In Plaintiffs' Motion for Protective Order, they asserted, inter alia, that "almost none" of Kmart's and the Sun Defendants' discovery was reasonably calculated to lead to the discovery of admissible evidence relevant to the Recusal Motions, *i.e.,* Judge Savage's alleged bias. *Id.* at 9-11. Plaintiffs also reasserted their claims that some of the documents requested invaded the attorney-work product and attorney-client privileges and that the requests were unduly burdensome. *Id.* at 11-17.[18]

---

[17] Atty. Rohn never filed a personal objection or motion prior to her deposition. (Rohn Depo. Trans., p. 108). Rule 45 requires that a non-party's objections be filed within 14 days after the subpoena is served. *See* Fed. R. Civ. P. 45(d)(2)(B). In addition to the absence of any filing by Atty. Rohn herself, Plaintiffs' Motion for Protective Order filed on August 5, 2020 technically was "untimely" to serve as an objection for Atty. Rohn, who first received notice of the subpoena on July 15, 2010. Nonetheless, Atty. Rohn maintains that her personal objections were embodied in Plaintiffs' challenges. (Dkt. No. 889 at 69-70, 77).

[18] Generally, "'a party does not have standing to quash a subpoena served on a third party.'" *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (quoting *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001)).

In response to this combined motion, Judge Savage issued an Order, which states:

## ORDER

**AND NOW**, this 6th day of August, 2010, upon consideration of the Emergency Motion to Stay Consolidated Discovery Pending Ruling from the Third Circuit on Petition for Writ of Mandamus and Motion to Reconsider Order Granting Expedited Discovery and for Protective Order (Document 276 in Civil Action No. 02-107), it is **ORDERED** that the motions are **DENIED**.

**IT IS FURTHER ORDERED** as follows:

1. Discovery is limited to *document requests and depositions*;

2. Document requests shall be limited to the identities of persons and *documents bearing on the factual allegations in the motions for recusal;*

3. Documents shall be *produced in accordance with* the Order of August 2, 2010;

4. The deposition of Lee J. Rohn shall proceed, as ordered, on August 12, 2010, commencing at 9:00 A.M.

    s/  Timothy J. Savage
   TIMOTHY J. SAVAGE, J.

(Dkt. No. 615) (emphasis added).[19]

Thus, the Court must resolve Atty. Rohn's claims of ambiguity based on the Order's language and the context in which it was issued.

### 1.  Reference to August 2nd Order

Atty. Rohn's first argument about the ambiguity of the August 6th Order focuses on its reference to the August 2nd Order and her "confusion" as to whether the terms of the earlier Order

---

[19]  The August 2nd Order referred to Kmart's motion for a shortened discovery response time and Atty. Rohn's deposition scheduled for August 12, 2010. The Order required Plaintiffs to respond to the written Request for Production of Documents by: (1) serving their responses and all documents requested organized in a specific fashion; (2) file their objections to any specific request for production; and (3) submit any documents withheld because of objections to the Court for *in camera* inspection. The Order required these tasks to be completed by August 9, 2010. (Dkt. No. 613).

applied to the Sun Defendants' subpoena duces tecum. In her testimony at the evidentiary hearing and her pre-remand filings, Atty. Rohn asserts that the August 2nd Order—requiring a privilege log and *in camera* inspection of documents—did not extend to the documents under the subpoena. (Dkt Nos. 649 at 7; 890-2 at 103-04). This assertion is belied by the express language of the August 6th Order as well as Atty. Rohn's own filings.

It is undisputed that the August 2nd Order was issued in response to Kmart's motion to shorten the time for Plaintiffs to respond to its written discovery requests, and therefore the only discovery in dispute at that time were Kmart's interrogatories and document requests. (Dkt. No. 613). However, with the Sun Defendant's subpoena also pending, Plaintiffs subsequently filed an omnibus motion which included a Motion to Stay Discovery, a Motion to Reconsider the August 2nd Order, and a Motion for Protective Order challenging *both* Kmart's discovery and the Sun Defendants' subpoena. (Dkt Nos. 606, 614). Plaintiffs raised objections to the Sun Defendants' subpoena and Kmart's written discovery requests in both sections of the omnibus motion relating to reconsideration of the expedited discovery order and the requested protective order. (Dkt. No. 614 at 9-19).

The Court's August 6th Order was entered "upon consideration of the Emergency Motion to Stay, the Motion to Reconsider and . . . for Protective Order," thus, clearly addressing the entirety of Plaintiffs' Motion, including the challenge to the subpoenaed documents. (Dkt. No. 615). Paragraph 3 of the August 6th Order clearly incorporates the August 2nd Order stating, "[d]ocuments shall be produced in accordance with the Order of August 2, 2010."[20] Thus, Atty.

---

[20] Significantly, Paragraph 3 of the August 6th Order is located between the paragraph defining the limitations on discovery (which Atty. Rohn admits refers to Kmart's requests *and* the Sun Defendants' subpoena) and the paragraph confirming the date for Atty. Rohn's deposition, which was triggered by the Sun Defendants' subpoena. The application of the August 2nd Order to the Sun Defendants' subpoena is patently clear when the Order is read in context.

Rohn's assertion that the August 2nd Order did not apply to the subpoena strains credulity as does her arguments that she was "confused" as to whether the subpoenaed documents were subject to the *in camera* procedure set forth in the August 2nd Order. Indeed, Plaintiffs emphasized in the Motion to Stay they filed in District Court that responding to *both* Kmart and Sun's document requests in the manner required by the August 2nd Order increased the burdensomeness responding to those requests. (Dkt. No. 614 at 12). Plaintiffs' arguments, made by Atty. Rohn prior to her deposition, confirm that she was aware that the August 2nd Order applied to the subpoena. The Court therefore rejects the argument that the August 6th Order was ambiguous as it relates to the August 2nd Order.

### 2.   Documents "Bearing On" Recusal Allegations

Atty. Rohn also argues that the Court's August 6th Order was ambiguous in its description of permissible discovery as documents "bearing on the factual allegations in the motions for recusal." She testified that she believed that this language did not extend to documents that might reflect on the personal knowledge, credibility, or potential biases of the persons making the allegations against Judge Savage in the Recusal Motions. Atty. Rohn testified in both her deposition and at the July 2019 evidentiary hearing that none of the documents listed in the subpoena duces tecum were relevant because they did not directly relate to *Judge Savage's* alleged bias. (Rohn Depo. Trans., pp. 18-19; Dkt. No. 890-2 at 81-82, 96). To the extent that Atty. Rohn is suggesting that declarants whose allegations are at the center of a legal dispute are immune from discovery that bears on their knowledge, credibility and biases, this argument cannot withstand even the most basic scrutiny.

Discovery permitted through a Rule 45 non-party subpoena is as broad as discovery permitted under Fed. R. Civ. P. 26. *In re Novartis and Par Antitrust Litigation*, 2019 WL 5722055,

at *4 (E.D. Pa. Nov. 5, 2019); Fed. R. Civ. P. 45. Rule 26(b)(1) provides that discovery need not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Nothing in the August 6th Order expressly or impliedly narrowed the Rule 26 standard. Consequently, any document "bearing on"—*e.g.,* clarifying, supporting, undermining, etc.—the factual allegations in the motions for recusal fell within the subject matter permitted in Rule 26 discovery and the scope of the August 6th Order.[21] *See Besler v. Hanlon*, 199 F.R.D. 553, 556 (D. Md. 2001) ("The importance of credibility of witnesses to the trial of cases cannot be overstated . . .. The rules of evidence provide frequent reminders of the importance of credibility issues in trials.")

Most of the evidence relating to allegations of judicial bias against Judge Savage was based on affirmations and declarations of Atty. Rohn and persons connected to her. She asserted, however, that her credibility was not in issue "because the motion wasn't only supported by [her] affidavit, but also by numerous other persons' affidavits, affirming the same behavior." (Rohn Depo. Trans., pp. 19-20).

It is well-established that the number of "witnesses" does not necessarily ensure success on the merits of a claim. Whether a party meets the requisite standard of proof is not based on who brings the greater number of witnesses or presents the greater quantity of evidence. Rather, the sufficiency of proof is based upon which witnesses and which evidence is found to be most worthy

---

[21] The phrase "bearing on" is regularly used when discussing the broad standard of "relevance" under Rule 26. *See, e.g., Stewart-Wilson by Stewart v. United States*, 2019 WL 1894707, at *2 (W.D. Pa. April 29, 2019) (when a statute of limitations defense was raised, the Court directed the parties to engage in discovery "on matters bearing on the statute of limitations and the assertion of the equitable tolling doctrine")); *Silla v. One Three Five, Inc.*, 2019 WL 1330921, at *3 (W.D. Pa. March 25, 2019) (because the challenged information has direct bearing on the issue of whether Silla is bound by the settlement agreement, discovery is permitted). *See also* BURTON'S LEGAL THESAURUS, Comprehensive Index at 700 (5th Ed. 2013) ("bearing on" synonymic to "relative (relevant)").

of belief. *Curtician v. Kessler*, 2013 WL 6388449, at *6 (W.D. Pa. Dec. 6, 2013); *see also Gonsalves v. People*, 70 V.I. 812, 850-851 (2019) (The weight to be given to evidence is determined by the quality of the testimony [or other evidence] rather than the number of exhibits or witnesses supporting the factual determination.)

Likewise, when addressing any issue based heavily on witness testimony, a witness' knowledge, credibility, and potential biases are "relevant." Fed. R. Evid. 401; *see United States v. Abel*, 469 U.S. 45, 52 (1984) (witness bias is almost always relevant and provable by extrinsic evidence, in contrast to less favored forms of impeachment); *Aetna Inc. v. Mednax, Inc.*, 2019 WL 6250850, at *6 (E.D. Pa. Nov. 22, 2019) (discovery of consulting agreements and nondisclosures agreements for former employees bear on witness credibility and are discoverable). Here, the declarants were Atty. Rohn, Atty. Rohn's clients dissatisfied with their jury verdicts, witnesses who received payments from Atty. Rohn or her clients, as well as several persons whose declarations were not based upon personal knowledge.[22] Documents which might reasonably provide—or lead to the discovery of—admissible evidence regarding the declarants' knowledge, credibility and biases would clearly be relevant. Nothing in the August 6th Order suggests otherwise.

In sum, Atty. Rohn's assertion that none of the documents sought by the Sun Defendants' subpoena had "bearing on the factual allegations in the motions for recusal" is untenable under well-established legal principles embedded in Rules 26 and 45 of the Federal Rules of Civil

---

[22] For example, two of the affiants were experts used by Atty. Rohn on a regular basis and/or to whom she paid referral fees from her firm account as well as medical and/or expert witness fees through her clients' trust accounts. However, Atty. Rohn did not review any of her firm's financial records relating to the extent of payments made to these witnesses for the last three years, which could reflect bias on the part of these declarants. (Dkt. Nos. 606-1; 899-2 at 142-144; Rohn Depo. Trans., pp. 89-92).

Procedure. The Court therefore finds that Atty. Rohn's strained interpretation of the August 6th Order is objectively unreasonable and does not shield her from a finding of contempt.

### 3.   Contemptuous Conduct

Atty. Rohn's untenable interpretation of the August 6th Order; the inconsistency between her current arguments and her arguments before the Third Circuit; her failure to file personal objections or motions challenging the subpoena; the absence of any attempt to clarify the Order's alleged ambiguity;[23] her appearance at her deposition without a single document; and her cursory, at best, search for documents requested undermine Atty. Rohn's arguments. The Court concludes that Atty. Rohn has attempted to cloak her choice to disobey the subpoena and the August 6th Order "under the guise of 'complying' with the Order by giving it a strained interpretation more to [her] liking." *In re Ransom*, 599 B.R. 791, 813 (Bkrtcy. W.D. Pa. 2019). While Atty. Rohn may have been frustrated with Judge Savage's cursory Orders under the circumstances, the refusal of both the District Court and the Third Circuit to stay discovery required Atty. Rohn to comply with the subpoena or face contempt sanctions. She made the choice not to comply and must live with the consequences of that choice.

For the foregoing reasons, the Court finds that Atty. Rohn's interpretation of the August 6th Order and its effect on the subpoena—that none of the documents requested by the subpoena

---

[23]   Neither Plaintiffs nor Atty. Rohn sought clarification of the August 6th Order from Judge Savage, despite advising the Third Circuit *before* the deposition that the Order was "confusing." Generally, persons subject to a court order are free to seek modification or clarification of that order or object to the same, just as Plaintiffs did with the Third Circuit's Mandamus Order. (Case No. 10-3345, Doc. 003110311013) That way, if some detail needs to be articulated more specifically, it can be clarified. *Federal Trade Commission v. Nat'l Urological Group, Inc.*, 786 F. App'x 947, 956 (11th Cir. 2019) (a person facing an injunction cannot stay silent and then complain about alleged "ambiguity" later); *see also IQVIA, Inc. v. Veeva Systems, Inc.*, 2019 WL 3069186, at *2 (D.N.J. July 11, 2019) (when parties raised questions about the scope of Special Master's Order, clarification order was issued).

had "a bearing on" the recusal allegations—is objectively unreasonable, and her attempt to seek refuge in claims of ambiguity rings hollow. Based upon all the evidence, the Court finds that there is clear and convincing evidence that Atty. Rohn's actions—viewed objectively—violated the subpoena and that her claims of ambiguity neither shields her from that clear violation nor establishes an "adequate excuse" for her noncompliance under Rule 45.

### B.    Necessity of Order Compelling Discovery

As an additional defense, Atty. Rohn now asserts that holding her in contempt is improper because Defendants did not obtain a separate order compelling her to comply with the subpoena before seeking a finding of contempt. (Dkt. Nos. 891 at 1, 4-9; 894 at 9-11). Because she is not a party to the *Vitalis* case, she asserts that a separate Order directing her compliance with the subpoena was required. *Id.*

As a preliminary matter, Atty. Rohn's contention that a separate Order compelling compliance was required lacks merit. In support of her argument, Atty. Rohn cites to the Advisory Committee Notes to Fed. R. Civ. P. 45 which states that "it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena." *See also North American Co. for Life & Health Ins. v. Fuhrmeister*, 2015 WL 5460586, at *2 (E.D. Pa. Sept. 17, 2015) (declining to assess attorneys' fees against non-party who failed to appear at deposition upon short notice despite receipt of subpoena duces tecum).

However, federal courts have recognized that defiance of a subpoena issued under Rule 45(a) is subject to contempt sanctions because such a subpoena is a valid court order. *United States S.E.C. v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010) (recognizing that a court is *not* required to order

compliance before imposing contempt sanction);[24] *see also Jones v. Thomas Jefferson University Hospitals, Inc.*, 2015 WL 1255997, at *2 (E.D. Pa. March 19, 2015) (non-party held in contempt for failing to attend deposition for which he was subpoenaed and failing to show an adequate excuse for his non-compliance); *Feltman v. Granite State Ins. Co.*, 2008 WL 630282, at *4 (Bkrtcy. D.N.J. March 5, 2008) (holding non-party in contempt for failing to comply with properly issued subpoena when he lacked an adequate excuse for that failure). Unlike discovery requests among parties, a Rule 45 subpoena is, itself, an order of the Court. *See Hyatt*, 621 F.3d at 690; *see also Highland Tank & Mfg. Co. v. PS Intern., Inc.*, 227 F.R.D. 374, 380 (W.D. Pa. 2005) (defiance of an attorney-issued subpoena is defiance of a court order, subjecting a recalcitrant witness to contempt sanctions).

The various cases upon which Atty. Rohn relies do not support her claim that an Order compelling production is required. (Dkt. No. 891 at 3-4). For example, *Sprint Solutions, Inc. v. iCell Guru, Inc.*, 310 F.R.D. 563, 569 (N.D. Ill. 2015), involved a Rule 30(b)(6) subpoena of a corporate party's designee, not a Rule 45 subpoena to a non-party. Under the explicit terms of the Federal Rules of Civil Procedure, an Order under Rule 37 compelling compliance with a Rule 30(b)(6) deposition notice is required before a party may seek sanctions. *See* Fed. R. Civ. P. 37(a)(3)(B) (addressing motions to compel discovery responses directed to parties). *Cf. Acosta v. La Piedad Corp.*, 894 F.3d 947, 950 (8th Cir. 2018) (agency must obtain a court order to seek contempt for violation of *administrative* subpoena).

Likewise, *In re Rule 45 Subpoena Issued to Robert K. Kochan*, 2007 WL 4208555 (E.D. N.C. Nov. 26, 2007) does not support Atty. Rohn's position. In *Kochan*, the Rule 45 deponent

---

[24] The contempt order in the *Hyatt* case was set aside on appeal because the petitioner's notice and motion did not adequately notify the non-compliant party that the petitioner was seeking a finding of contempt. 621 F.3d at 694. Such is not the case here.

filed a *timely* objection to the subpoena. While the objections *were pending*, plaintiffs filed a motion to compel and for contempt. *Id.* at *1. The Court thereafter issued an Order resolving the dispute compelling the non-party to provide the items and documents demanded but denied the motion for contempt finding that the timely filing of objections that remained unresolved was an adequate excuse for non-compliance. *Id.* at *5. Here, by contrast, Atty. Rohn did not file any personal objections to the subpoena; the objections raised by her clients had been denied before her deposition; and both the District Court and Third Circuit Court had denied Motions to Stay the Discovery.

In any event, Atty. Rohn's underlying factual premise—that there was no "separate" Order requiring her to comply with the subpoena—is unfounded. In addition to the subpoena (a court order), the District Court—according to Atty. Rohn's own arguments—*did* issue the August 6th Order addressing Plaintiffs' objections to the subpoena. (Dkt. No. 615). Because Atty. Rohn relies on the Plaintiffs' omnibus August 5th motion as her "personal" attempt to seek a protective order (Dkt. No. 889 at 69-70),[25] the Court's ruling denying Plaintiffs' request to stay discovery and ordering production of documents "bearing on" the recusal allegations was an Order compelling Atty. Rohn to comply with the subpoena's demand for documents. Because her claim of irrelevance and burdensomeness had been largely overruled, the August 6th Order was an independent order requiring compliance with the subpoena. This was further reinforced when the

---

[25] At the evidentiary hearing, Atty. Rohn testified that she received a protective order relating to the subpoena. (Dkt. No. 889 at 70). Upon closer questioning, she admitted she did not file a motion to quash the subpoena and could not initially recall whether she personally filed a motion for protective order. *Id.* at 70-71. Upon being shown Plaintiffs' Motion to Reconsider filed on August 5, 2010, Atty. Rohn admitted that she did not file a personal objection to the subpoena but maintained that the "protections" from the August 6th Order applied to her obligations under the subpoena. *Id.* at 77.

Third Circuit denied Plaintiffs' Motion to Stay Discovery pending resolution of their application for a Writ of Mandamus. (Case No. 10-3345, Doc. 003110248528). Accordingly, there was much more here than the bare subpoena duces tecum requiring Atty. Rohn's compliance.

The Court recognizes that there are circumstances involving a Rule 45 subpoena which may well sway the Court to exercise its discretion to give a Rule 45 witness—who is necessarily a non-party to the action—more leniency for her failure to comply with a subpoena involving another person's case. *See, e.g., Leyse v. Bank of America, N.A*., 2019 WL 1307880, at *1 (D.N.J. March 22, 2019) (discussing Rule 45's provisions aimed at protecting a subpoenaed non-party from undue burden or expense). Such leniency, however, is not mandated by the plain terms of Rule 45 and the facts of each case must be considered in exercising the Court's discretion.

The circumstances of this case do not warrant the leniency that might be extended in certain situations. The "non-party" in this case was Plaintiffs' counsel who injected herself personally into the case by filing a seven-page Affirmation setting out accusations against a United States District Judge from whom her clients had obtained various unfavorable rulings. Moreover, the recusal motions alleged the Judge was biased against her, personally. Atty. Rohn was already well-versed in the issues of the cases and the facts at the core of the recusal motions. In light of the circumstances here, the Court does not find that leniency is warranted.

In sum, Courts have long recognized the "basic proposition that all orders and judgments of courts must be complied with promptly." *Commonwealth of Pa. v. Local Union 542, Int'l Union of Oper. Engineers*, 552 F.2d 498, 506 (3d Cir. 1977) (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)). If a person receiving a court order believes the order is erroneous or incorrect, the remedy is for that person to appeal the order; absent a stay pending appeal, however, the person must still promptly comply with the order. *Solis v. Koresko,* 2016 WL 4536438, at *5 (E.D. Pa.

Aug. 31, 2016), *aff'd Sec'y U.S. Dept. of Labor v. Koresko*, 726 F. App'x 127 (3d Cir. 2018) (ERISA plan administrator was subject to civil contempt when he failed to obey court order to identify and turn over plan assets, even though he believed the order was invalid); *see also Nicholas v. Grapetree Shores, Inc.*, 2012 WL 7170423, at *1 (D.V.I. Nov. 14, 2012) (attorney may be held in contempt for failing to comply with order to produce records notwithstanding her appeal, unless a stay pending the appeal is granted). "'Persons who make private determinations of the law and refuse to obey an order generally risk [ ] contempt even if the order is ultimately ruled incorrect. . .'" *Paddick v. Butt*, 2018 WL 6830476, *6 (E.D. Pa. Dec. 27, 2018) (quoting *Maness*, 419 U.S. at 458) (attorney's disobedience of court order to disburse a settlement fund could be held in civil contempt, even while issue was on appeal). "'[T]he judicial power to hold a non-party' in contempt under Rule 45(e) is the 'primary mechanism by which a court can enforce a subpoena.'" *In re 400 Walnut Associates, L.P.*, 475 B.R. 217, 230 (Bkrtcy. E.D. Pa. 2012).

For all of the foregoing reasons, Atty. Rohn's argument—that a separate Order directing her to comply with the subpoena is required before she can be held in contempt— is rejected.

### C.    Alleged Substantial Compliance

Another argument raised by Atty. Rohn is that she should not be held in contempt because her initial failure to comply with the subpoena was an "insignificant violation" and that she "substantially complied" with the subpoena after being ordered by the Magistrate Judge to produce the documents requested. Consequently, she asserts that her ultimate substantial compliance with the subpoena negates any finding that her conduct was contemptuous. (Dkt. No. 891 at 4-9).

Again, Atty. Rohn's argument is unpersuasive. Preliminarily, Atty. Rohn's noncompliance with the subpoena under the circumstances here was far from an "insignificant violation." Her

failure to comply, notwithstanding the Court Orders from both this Court and the Third Circuit, is nothing short of recalcitrance.

Moreover, Atty. Rohn's substantial compliance argument fares no better. The Magistrate Judge's original Contempt Order directed Atty. Rohn to produce the subpoenaed *documents* to Defendants, unless she claimed those documents were privileged. (Dkt. No. 658). Thereafter, Atty. Rohn produced only approximately 14 pages of emails related to the *James-Steele* case. (Dkt. No. 689).[26] Instead of producing the *documents* responsive to the subpoena, Atty. Rohn filed a "response" to the subpoena objecting to most of the document requests. Those objections reasserted the previously rejected arguments that the documents requested were not relevant and/or that the document requests were overly broad and burdensome. (Dkt. No. 706).

Accordingly, Atty. Rohn's "response" to the subpoena did not comply with the Magistrate Judge's Contempt Order. The Order specifically directed Atty. Rohn to provide Defendants all non-privileged responsive documents in her possession. Simply regurgitating previously rejected objections can hardly be deemed to be substantial compliance with the Magistrate Judge's directive. Atty. Rohn cannot, therefore, attempt to seek refuge from a finding of contempt in her nonresponsive "response" to the Magistrate Judge's Order.

In short, Atty. Rohn's initial failure to comply with the subpoena was not "insignificant" and her subsequent response was nonresponsive. Her arguments to the contrary ring hollow.

---

[26] The record reflects that prior to Atty. Rohn's deposition, she submitted documents in response to Kmart's document requests. While these exhibits consist of hundreds of pages, they are largely transcripts from the *McNamara* and *Wallace* cases. (Dkt. Nos. 616-617; Hearing Exhibits 6 and 7). Atty. Rohn does not claim or attempt to explain how these transcripts are responsive to the *subpoena's* list of documents to be produced.

### D.       Alleged Impossibility of Compliance

In further opposition to the Motion for Contempt, Atty. Rohn argues that the burdensome and irrelevant nature of the documents requested in the subpoena—objections she raised before her deposition—provides an "adequate excuse" for her failure to comply with the subpoena's demands. (Dkt. No. 649 at 14; 891 at 3-9).

Under Rule 45, in order to establish an adequate excuse for disobeying a subpoena duces tecum, the subpoenaed party must show some *meaningful* effort to comply with a subpoena. *See United States v. Bryan*, 339 U.S. at 332 (inability to comply with a subpoena "must fail in the absence of even a modicum of good faith in responding to the subpoena."). In evaluating a motion for contempt, the Court may consider whether the alleged contemnor had taken all reasonable steps to comply with the Order. *FTC v. Lane Labs-USA, Inc.*, 624 F.3d at 591; *see also Food Lion, Inc.*, 103 F.3d at 1017 (to show substantial compliance, the recalcitrant party must show it "'took all reasonable steps within [its] power to comply with the court's order.'")

An undue burden can be determined by looking at the relevance of the documents, the need for the documents, the breadth of the document request, the time period covered by the request, the particularity with which the documents are described, and the burden imposed. *In re Domestic Drywall Antitrust Litig.,* 300 F.R.D. at 252. The onus of establishing undue burden, however, is on the party challenging the subpoena. The objecting party must establish the claimed burden of producing documents with specificity. *Gabe Staino Motors*, *Inc. v. Volkswagen of America, Inc.*, 2003 WL 25666135, at *2 (E.D. Pa. Feb. 28, 2003). Thus, the alleged contemnor must present evidence beyond "a mere assertion" of the inability to produce the documents as well as establish that it has made "in good faith all reasonable efforts to comply." *See Harris I*, 47 F.3d at 1324; *Secretary of Labor v. Altor Inc.*, 783 F. App'x 168, 171 (3d Cir. 2019) (same).

Atty. Rohn's own testimony undermines any basis for concluding that she had an adequate excuse for her noncompliance. Based upon her own testimony, it is clear that she was not reasonably diligent in attempting to comply with the subpoena's document demands. She testified that in the 22 days between July 15, 2010 (when the notice of deposition/subpoena duces tecum was issued) and the filing of the August 6th Order: (1) she confirmed that they had no recordings of statements by Judge Savage; and (2) she asked her office manager to check with the firm's staff to determine if any of them recalled any motion to recuse or communications regarding Judge Savage filed in the last three years. She admitted, however, that neither she nor her employees took any other action to search—physically or electronically—for documents responsive to the subpoena. (Dkt. No. 889 at 71-74; 155-58); *cf. Food Lion, Inc*., 103 F.3d at 1020 (undisputed fact that subpoenaed non-party failed to search and produce documents from the off-site boxes negated any "substantial compliance or impossibility defense"). Atty. Rohn's purported search falls woefully short of anything that can be considered a genuine attempt to comply with the subpoena.

Likewise, Atty. Rohn claims that her actions in "preserving" her objections to the subpoena —raised through Plaintiffs' omnibus motion filed on August 5, 2010—establish an adequate excuse for her failure to produce documents at her deposition. The Court rejects this excuse for two reasons. First, Plaintiffs asserted these objections in their *pre-deposition* filings with both the trial and appellate courts. (Dkt. No. 614; Case No. 10-3345, Doc. 003110245283). However, both the District Court and the Third Circuit effectively denied the request for relief. Because Atty. Rohn's objections—purportedly made through Plaintiffs' motion—were rejected *prior* to her deposition, Atty. Rohn cannot base her claim of "adequate excuse" for noncompliance on those same objections. Second, even if such objections were available—which they are not—Atty. Rohn's lack of any meaningful effort to search for responsive documents, together with the

34

absence of any explanation of the alleged burden that the document production imposed, renders her claim of burdensomeness nothing more than a "mere assertion of inability." Thus, the claimed adequate excuse argument fails.

> As pronounced by the U.S. Supreme Court long ago:
>
> A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity. We have often iterated the importance of this public duty, which every person within the jurisdiction of the Government is bound to perform when properly summoned.

*United States v. Bryan*, 339 U.S. 323, 331 (1950). For all the reasons discussed above, this Court rejects Atty. Rohn's arguments that the August 6th Order was ambiguous; that she did not violate the Court's Orders; that she substantially complied with the subpoena; and that she had an "adequate excuse" for her failure to comply.

### E.    Alleged Mootness of the Contempt Issue

In Atty. Rohn's final written submission on the contempt issue—filed after Defendants' final brief—she now claims the contempt issue is moot. She asserts that because the Motion for Recusal was denied in 2011 and she did not appeal that ruling, there is no longer any basis to hold her in contempt. (Dkt. No. 894 at 4-9).[27] This argument also fails.

---

[27] Atty. Rohn's assertion that she did not appeal from the denial of the Motion for Recusal is questionable, at best. As noted earlier, the Motions to Recuse were filed by Atty. Rohn's clients. Following the denial of the Motions, Plaintiffs filed a 69-page Petition for Writ of Mandamus— signed by Atty. Rohn—with the Third Circuit, Case No. 11-3665, challenging the denial of the Motions. (Case No. 11-3665, Doc. 003110671303). After the Third Circuit held that the Petitioners' brief could not exceed 30 pages, Plaintiffs withdrew their Petition, but reserved the right to seek review on an individual basis. *Id.* at Doc. 003110709742.

Approximately one month later, Atty. Rohn filed a separate Petition for Writ of Mandamus with the Third Circuit on behalf of Vitalis, docketed as Case No. 11-4355, challenging Judge Savage's denial of Vitalis' Recusal Motion ("Recusal Mandamus"). Several months thereafter, Vitalis filed in the Third Circuit—through Atty. Rohn—a Motion to Stay the District Court proceedings pending a decision on the Recusal Mandamus. (Case No. 11-4355, Doc.

Although Atty. Rohn cites to numerous cases in support of her claim of mootness or abatement, she overlooks the key bases for those decisions. In most of the cases, the contempt sanctions imposed were specifically designed to be coercive and thus were no longer necessary once the case ended. *See*, *e.g., Shillitani v. United States*, 384 U.S. 364, 370-71 (1966) (imprisonment for defiance of a grand jury subpoena is coercive and ends when the grand jury has been discharged); *Yates v. United States*, 227 F.3d 844, 846-47 (9th Cir. 1955) (witness confined for refusing to respond to cross-examination questions at trial must be released when trial has ended); *Harris v. Texas & Pacific Ry. Co.*, 196 F.2d 88, 89-90 (7th Cir. 1952) (court's order "sought only to coerce [the party] to produce records of the Board").

In other cases, remedial sanctions were vacated because the underlying injunction or order allegedly violated was reversed on appeal. *See United States v. United Mine Workers of America,* 330 U.S. 258, 295 (1947). A similar result occurred when the parties settled their dispute while the appeal was pending. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 451 (1911) ("When the main case was settled, every proceeding which was dependent on it, or a part of it, was also necessarily settled.")

Unlike the cases on which Atty. Rohn relies, the contempt sought in this case is not coercive, but compensatory. Atty. Rohn would be assessed a portion of the Sun Defendants' attorneys' fees and expenses in pursuing the contempt motion. *See In re Ransom*, 599 B.R. at 821-22 (when coercive sanctions are no longer appropriate, contemnor can be assessed compensatory

---

003110798517). Vitalis' Recusal Mandamus—along with separate Writs filed by some of the other consolidated Plaintiffs—was denied in a summary order from the Third Circuit in March 2012. (Case No. 11-4355, Doc. 003110828505).

Thus, while Atty. Rohn did not personally appeal from the denial of the Motions to Recuse, the same Plaintiffs who she claimed represented her interests in challenging the subpoena did pursue appeals—albeit through Mandamus petitions—and remained represented by Atty. Rohn during those appeals.

damages such as attorneys' fees and expenses caused by their violations). The purpose of a compensatory award is "'to make reparation to the injured party and restore the parties to the position they would have held had the [court's order] been obeyed.'" *Lawn Doctor, Inc. v. Rizzo*, 2019 WL 1299671, at *2 (D.N.J. March 21, 2019); *Ebeling & Reuss, Ltd. v. Swarovski Mgmt. & Consulting A.G.*, 1993 WL 82302, at *1 (E.D. Pa. March 19, 1993) (civil contempt allows for recovery of attorneys' fees to compensate for damages for past acts of disobedience of the court order). Had Atty. Rohn complied with the subpoena, Defendants would not have incurred the expenses relating to the Motion for Contempt.

In raising the mootness argument (or more accurately, a claim of abatement), Atty. Rohn simply fails "properly to differentiate between civil contempt of a coercive nature and civil contempt of a compensatory nature." *Backo v. Local 281, United Broth. of Carpenters & Joiners of Am.*, 438 F.2d 176, 182 (2d Cir. 1970). When a civil contempt is purely compensatory in nature, the contempt order does not necessarily abate when the proceedings out of which it arises are terminated. *Sperry Rand Corp. v. Pentronix, Inc.*, 353 F. Supp. 1291, 1292-93 (E.D. Pa. 1973). A compensatory civil contempt proceeding may continue even when the underlying injunction abates for reasons that do not go to the jurisdiction of the issuing court. *Coleman v. Espy*, 986 F.2d 1184, 1190 (8th Cir. 1993); *see also Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 376 (10th Cir. 1996) (a person who violates a temporary restraining order is subject to a compensatory civil contempt judgment, even if the restraining order later terminates due to passage of time or mootness).

In sum, the fact that the District Court denied the Motions for Recusal does not erase the damages incurred by these Defendants as a result of Atty. Rohn's contemptuous actions. *Cf. Jaeger*

*v. Massis*, 2000 WL 1678778, at *2 (2d Cir. Nov. 3, 2000) (when a civil contempt sanction is meant to compensate a complainant, it cannot be mooted by voluntary cessation of the suit). Accordingly, Atty. Rohn's mootness challenge is rejected.

## IV.    APPROPRIATE SANCTION

For the foregoing reasons, the Court finds by clear and convincing evidence that a valid subpoena existed; that Atty. Rohn had knowledge of and was served with the subpoena; and that Atty. Rohn disobeyed the subpoena by failing to produce any documents at her deposition. Further, after evaluating Atty. Rohn's testimony, documents and legal arguments, the Court finds that Atty. Rohn has not shown an "adequate excuse" for failing to comply with the subpoena and rejects her claim that she substantially complied with the subpoena.

The Court must consider the appropriate compensatory relief for the party harmed by Atty. Rohn's noncompliance. In determining compensatory sanctions, the Court recognizes that such damages "must not exceed the actual damages caused the offended party by a violation of the court's order." *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 975 (3d Cir.1982). Such damages may include an award of attorneys' fees incurred in connection with the contempt proceedings in order for the injured party to be restored to the position it would have occupied had the contemnor complied with the court order in question. *Robin Woods Inc.*, 28 F.3d at 400; *Cardionet, LLC v. Mednet Healthcare Technologies, Inc.*, 146 F. Supp. 3d 671, 692 (E.D. Pa. 2015).

Accordingly, the Sun Defendants will be provided the opportunity to submit an application for attorneys' fees and expenses in connection with pursuing their Motion for Contempt. Atty. Rohn will have an opportunity to respond to that submission, and the Sun Defendants will be

allowed to file a reply. The Court will then determine a reasonable sanction for Atty. Rohn's contempt.

An appropriate Order accompanies this Memorandum Opinion.

Dated: August 20, 2020                                    _____/s/_____
                                                         WILMA A. LEWIS
                                                         Chief Judge