## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

MARK VITALIS,                                    )
                                                 )
                        **Plaintiff,**           )
                                                 )
                v.                               )        Civil Action No. 2005-0101
                                                 )
SUN CONSTRUCTORS, INC., HOVENSA L.L.C.,          )
RICHARD "DOC" LANGNER, and EXCEL GROUP,          )
INC.,                                            )
                                                 )
                        **Defendants.**          )
_____)

**Appearances:**

**Mark Vitalis,** *Pro Se*
         *Plaintiff*
**Lee J. Rohn, Esq.**
St. Croix, U.S.V.I.
         *Former Attorney for Plaintiff*

**Charles E. Engeman, Esq.**
**David J. Cattie, Esq.**
St. Thomas, U.S.V.I.
         *For Defendants Sun Constructors, Inc.,*
         *Richard "Doc" Langner, and Excel Group, Inc.*

**Carl A. Beckstedt, III, Esq.**
St. Croix, U.S.V.I.
         *For Defendant Hovensa L.L.C.*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

        THIS MATTER comes before the Court on the "28 U.S.C.S. § 1927 Motion for Fees and

Costs Related to the Recusal Motion" ("Motion for § 1927 Fees") filed by Defendants Sun

Constructors, Inc., Richard "Doc" Langner, and Excel Group, Inc. (collectively, the "Sun

Defendants"). (Dkt. No. 795). The Sun Defendants seek attorneys' fees and costs in the amount of

$100,288.90 as a sanction against Plaintiff's counsel, Lee J. Rohn, Esq. ("Attorney Rohn") for the

alleged unreasonable, vexatious, and bad faith manner in which she multiplied the legal proceedings herein by filing and pursuing a motion to recuse the Honorable Timothy J. Savage from presiding over this case. (Dkt. No. 800 at 8). Attorney Rohn filed an Opposition (Dkt. No. 799), and the Sun Defendants filed a Reply (Dkt. No. 800). For the reasons discussed below, the Sun Defendants' Motion for § 1927 Fees will be denied.

## I.    BACKGROUND

In July 2005, Plaintiff Mark Vitalis ("Plaintiff" or "Vitalis") filed an employment discrimination lawsuit against Sun Constructors, Inc. ("Sun Constructors"), its employee Richard "Doc" Langner ("Langner"), and Hovensa, L.L.C. ("Hovensa"). (Dkt. No. 1). After filing a First Amended Complaint adding Excel Group, Inc. and Merit Electrical and Instrumentation of Louisiana, Inc. as defendants (Dkt. No. 143-2), Plaintiff then filed a Second Amended Complaint in August 2009. (Dkt. No. 337). In the Second Amended Complaint, Plaintiff alleged, *inter alia*, that Sun Constructors falsely represented to him that they were not hiring for a supervisory carpenter position on a project in which Sun Constructors was engaged at the Hovensa plant on St. Croix, Virgin Islands. *Id.* at ¶¶ 17-20. Plaintiff contended that he was denied the position based on his race and national origin—namely, because he was a black West Indian. *Id.* at ¶ 21. Plaintiff also alleged that he was hired by Sun Constructors for a non-supervisory carpenter position and then illegally fired by Langner in furtherance of Defendants' discriminatory policies. *Id.* at ¶ 20. Plaintiff further claimed that Hovensa controlled and ratified the business decisions of Sun Constructors, and therefore was liable for Sun Constructors' actions. *Id.* at ¶ 12. Finally, Plaintiff alleged that he had filed a complaint with the Equal Employment Opportunity Commission and received a "right to sue" letter. *Id.* at ¶ 27.

The presiding Judge, the Honorable Timothy J. Savage ("Judge Savage"),[1] entered summary judgment in favor of Defendants Excel Group, Inc., Langner, and Hovensa, but found that two of Vitalis' employment discrimination claims against Sun Constructors could proceed to trial. (Dkt. Nos. 400, 493). At the conclusion of the trial, which was held from February 22-25, 2010, the jury returned a verdict in favor of Sun Constructors. (Dkt. Nos. 548, 549). On appeal, the Third Circuit affirmed. (Dkt. No. 550).

In June 2010, while motions for attorneys' fees filed by Sun Constructors and Hovensa were pending before the District Court and the appeal was pending in the Third Circuit, Vitalis—along with seven additional plaintiffs represented by Attorney Rohn in other cases—sought the recusal of Judge Savage from their respective cases ("Recusal Motion").[2] (Dkt. No. 579). In his case, Vitalis alleged that Judge Savage "ha[d] such a degree of personal animosity and dislike for clients of … [Attorney Rohn], and Attorney Rohn individually" that it negatively affected her clients' cases. *Id.* at 1. As grounds therefor, Vitalis cited to excerpts from his trial transcript, purportedly supporting allegations that Judge Savage "repeatedly belittled and mocked Attorney

---

[1] The case was initially assigned to the Honorable Raymond L. Finch. On October 7, 2009, the Sun Defendants filed a motion requesting that Judge Finch recuse himself because of alleged *ex parte* communications between Attorney Rohn and one of Judge Finch's law clerks. Judge Finch granted the motion over Plaintiff's objection. (Dkt. Nos. 358, 360). In October 2009, the case was reassigned to visiting District Judge Timothy J. Savage. (Dkt. No. 362).

[2] The seven additional cases in which the plaintiffs filed virtually identical recusal motions were: *Idona Wallace v. Kmart Corp.*, Civil Action No. 2002-0107*; Errol Stanley v. St. Croix Basic Service, Inc.*, Civil Action No. 2003-0055*; Forrest Thomas v. Centennial Comm., et al.,* Civil Action No. 2003-0163; *Patrice Canton v. Kmart Corp.*, Civil Action No. 2005-0143*; Glenford Ragguette v. Premier Wines and Spirits, Ltd.,* Civil Action No. 2006-0173*; Terrance Alexis v. Hovensa L.L.C., et al.,* Civil Action No. 2007-0091; and *Cora Bergan v. Kmart Corp.*, Civil Action No. 2007-0120. These cases, except for the *Bergan* matter, were later consolidated to resolve the recusal issue. (Dkt. No. 594). On the day prior to the commencement of the recusal hearing, Rachel Davis, a plaintiff in *Stanley*, withdrew her recusal motion following a settlement in her case. (*Stanley*, Dkt. No. 468). The Court then severed the *Stanley* case from the recusal proceedings (*id.* at Dkt. No. 500), thus leaving seven cases for which recusal was sought.

Rohn;" showed favoritism towards the defense by cutting off Attorney Rohn and Vitalis' witnesses during testimony; assisted the defense in questioning witnesses on cross-examination; and refused to reschedule hearings despite the unavailability of Attorney Rohn. *Id.* at 12-14. In an accompanying Declaration, Vitalis further claimed, *inter alia*, that Judge Savage would "snarl, cross his arms, at times stand up and pace the floor, and look frustrated and angry when [his] witnesses and [Attorney Rohn] were speaking," but was "pleasant to [Defendant Sun Constructors'] counsel and to the witnesses called on its behalf." (Dkt. No. 579-18 at ¶¶ 4, 5). Vitalis concluded that, based on his personal observations, "[Judge Savage] was not impartial such that [he] should proceed no further in deciding any issue pending in [Vitalis'] case, and should not have any involvement in it whatsoever." *Id.* at ¶ 10.

In addition to the Declaration from Vitalis, the attachments to the Recusal Motion included Declarations from Attorney Rohn ("Rohn Affirmation"), Attorney Rohn's clients in other cases ("Client Declarations"), and other individuals asserting that various actions allegedly taken, or statements allegedly made, by Judge Savage reflected the Judge's alleged bias against Attorney Rohn. (Dkt. Nos. 579-1;579-8; 579-9; 579-14; 579-15; 579-16; 579-18; 579-19; 579-20).[3]

In her Declaration, Attorney Rohn attested to what she perceived as numerous instances of bias in cases over which Judge Savage presided and she was counsel. (Dkt. No. 579-1). Referencing comments and actions that allegedly reflected Judge Savage's alleged "dislike, disdain, and lack of impartiality towards her" (*id.* at 6), and his alleged "animosity and hostility" (*id.* at 7), Attorney Rohn claimed that Judge Savage treated her clients differently by virtue of "their status as [her] client[s] and deprived them of equal protection under the law" (*id.* at 6).

---

[3] The attachments also included the transcript from the *Vitalis* trial to which Vitalis cited as evidence of alleged displays of biased conduct by Judge Savage. (Dkt. Nos. 579-2; 579-11; 579-12; 579-13).

The Client Declarations—which were virtually identical—stated that the individuals had personal knowledge of the facts in the Declarations by virtue of information relayed to them by Vitalis and Idona Wallace ("Wallace"), a plaintiff in another of Attorney Rohn's cases.[4] (Dkt. Nos. 579-14; 579-15; 579-16; 579-17; 579-20). Attorney Rohn's clients further stated that they questioned Judge Savage's ability to be impartial in "any matter in [their] case[s], or that [Judge Savage] is impartial," based on his treatment of the plaintiffs' witnesses and Attorney Rohn in the *Vitalis* and *Wallace* matters. *Id.* Other declarants who had observed, or participated in, the *Vitalis* trial generally attested that Judge Savage displayed hostility, disdain, negativity, acrimony, condescension, a demeaning and/or offensive manner and a lack of impartiality towards Attorney Rohn. (Dkt. Nos. 579-6; 579-7; 579-8).

In addition to the Declarations, attached to the Recusal Motion were three letters addressed to then Chief Judge Curtis V. Gómez ("Chief Judge Gómez"). In a letter dated December 22, 2009, Attorney Rohn wrote to Chief Judge Gómez regarding what she described as "the difficulty the civil trial bar is experiencing with some of the visiting judges." (Dkt. No. 579-21). Attorney Rohn claimed that there was a refusal by the visiting judges to hold scheduling conferences and a disregard for the schedules of other judges. *Id.* at 1. On April 15, 2010, Attorney Rohn again wrote to Chief Judge Gómez requesting reassignment of four of her cases due to what she perceived as increasing "anger, bias, and lack of impartiality" from Judge Savage. (Dkt. No. 579-9 at 1). Attorney Rohn claimed that Judge Savage had made "various statements that clearly appeared as

---

[4] In Wallace's case, the jury returned a verdict in favor of Kmart Corp. and against Wallace. *Wallace*, Dkt. No. 213. Similar to Vitalis, Wallace attested that Judge Savage displayed "a personal prejudice against her" (Dkt No. 579-19 at ¶ 2) and exhibited a "rude and contemptuous demeanor toward [her], [her] witnesses, and [her] counsel in the presence of the jury" (*id.* at ¶ 3). Wallace moved for the recusal of Judge Savage following her trial, alleging that he "[was] not impartial, such that he should proceed no further in deciding any issue pending in [her] case …." *Id.* at ¶ 9.

if [Judge] Savage had been gossiping about her to the defense bar, specifically to [the firm of Sun Defendants' counsel]." *Id.* Thereafter, in a letter dated May 18, 2010, Attorney Rohn stated that she was "again plead[ing] with [Chief Judge Gómez] to do something about Judge Savage," claiming that the Judge had unilaterally scheduled hearings in seven cases between May 27, 2010 and June 1, 2010 without consultation with counsel. (Dkt. No. 579-10 at 1). According to Attorney Rohn, despite her efforts in "promptly" moving to continue three of the hearings due to prior travel arrangements, "Judge Savage had denied the motions to continue as part of his vendetta against [her] and [her] office."[5] *Id.* at 2.

The Sun Defendants and other Defendants requested, and were granted, leave to conduct discovery into the allegations made by Attorney Rohn and her clients. (Dkt. Nos. 584, 585, 589, 595). Then, in response to the Recusal Motion, the Defendants in *Vitalis*, as well as certain other Defendants in the consolidated case, filed their respective Oppositions. (Dkt. Nos. 713, 714, 715, 716). The Sun Defendants argued that Attorney Rohn's allegations in the Recusal Motion were not supported by the record or her witnesses' deposition testimony, but instead had been refuted (Dkt. No. 716 at 2-7); that the Recusal Motion was "tactical and untimely" because it was filed post-trial despite citing alleged displays of bias by Judge Savage as early as 2009 (*id.* at 8-11); and that the bases stated by Vitalis for Judge Savage's recusal were insufficient to meet the recusal standard (*id.* at 11-19). The Sun Defendants also argued that Attorney Rohn was "attempt[ing] to concoct an example of extrajudicial bias by Judge Savage" by falsely accusing her co-counsel in another matter of relaying statements of bias by Judge Savage against her and members of her

---

[5] As evidenced by the record and noted by Attorney Rohn during her subsequent testimony at the recusal hearing, Attorney Rohn filed motions for reconsideration in those three matters, including *Vitalis*, and Judge Savage granted the motions. *See, e.g.*, Dkt. No. 577; *Wallace*, Dkt. No. 456 at Tr. 29:14-Tr. 29:15.

firm. *Id.* at 4-7. The Sun Defendants further argued that Attorney Rohn had misrepresented Judge Savage's bias towards her, and even if the Court harbored a "personal dislike or distrust of Attorney Rohn," that would not be sufficient grounds for recusal. *Id.* at 19-20.

A three-day evidentiary hearing then followed. *Wallace,* Civil Action No. 2002-0107 (Dkt. Nos. 453, 454, 455, 456).[6] Some witnesses testified favorably to Attorney Rohn and her clients' claims of bias, while other witnesses testified favorably to Defendants' position that there were no indications of bias warranting recusal.

On September 1, 2011, Judge Savage entered an Order denying the Recusal Motion and finding that there was no objective evidence of animus or bias against Attorney Rohn. (Dkt. No. 793). Rather, Judge Savage found that:

> Rohn came to the *Vitalis* trial with an attitude. She was unhappy with the rulings on the motions *in limine* that she believed limited her presentation of evidence. She challenged those rulings by threatening to disregard them.

(Dkt. No. 793 at 15). Judge Savage further found that "[t]hroughout the trial, despite the unequivocal ruling and numerous warnings, Rohn repeatedly injected references to discrimination against 'locals,'" although such evidence was not admissible. *Id.* at 14. Judge Savage concluded that Attorney Rohn's repeated attempts to present this inadmissible theory to the jury notwithstanding the Court's rulings to the contrary indicated that her conduct in doing so "was not inadvertent, but intentional." *Id.* Judge Savage noted, therefore, that "[he] had to remain vigilant" during the *Vitalis* trial because Attorney Rohn "made it clear that she intended to focus on the 'locals issue' regardless of the [Judge's] rulings." *Id.* at 15. Judge Savage further noted that, because Attorney Rohn had sought to "inject[] a legally impermissible and prejudicial theory in

---

[6] The recusal hearing transcripts were docketed in the *Wallace* case. (*Wallace,* Dkt. Nos. 453, 454, 455, 456).

her questioning of witnesses and arguments to the jury" (*id.* at 13), she, in turn, received fair and appropriate rulings which Attorney Rohn claimed to be inappropriate admonishments and signs of bias. *Id.* at 10, 14-15. In other words, the Court essentially found that it was Attorney Rohn's own unprofessional and recalcitrant conduct that led to "rebukes and warnings" from Judge Savage (*id.* at 12), which Attorney Rohn inappropriately labeled as indications of Judge Savage's alleged bias and partiality.

Judge Savage also concluded that Attorney Rohn's clients were manipulated into supporting his recusal as evidenced by the identical nature of the Declarations and their later uninformed and "scripted" testimony during the evidentiary hearing. *Id.* at 17-18. Additionally, Judge Savage found that witnesses—whom he described as having no connection to, or stake in, the outcome of the recusal proceedings—contradicted Attorney Rohn's allegations of his behavior. *Id*. at 20-22.

The Sun Defendants subsequently filed the instant Motion for Fees pursuant to 28 U.S.C. § 1927. (Dkt. No. 795). They argue that sanctions are warranted against Attorney Rohn because she filed and pursued the Motion to Recuse in bad faith, which ultimately multiplied the proceedings. *Id.* at 4-5. The Sun Defendants assert that the allegations set forth in the Recusal Motion are "factually specious and legally meritless;" "manifestly false;" based on "non-existent bias;" and intended to "insulate [Attorney Rohn] from what she perceived as a judge who would issue rulings with which she would disagree and to excuse adverse jury verdicts in her trials." *Id.* at 1-2; 4. Pointing to language in the Recusal Opinion regarding the involvement of Attorney Rohn's firm in obtaining the Declarations, the Sun Defendants further argue that Attorney Rohn launched a coordinated effort for her clients to provide "concocted affidavits" in support of Judge Savage's recusal. *Id.* at 4-5. The Sun Defendants also claim that Attorney Rohn led her clients and

other witnesses to testify falsely at the recusal hearing regarding Judge Savage's conduct during that hearing. *Id.* at 7. In addition, the Sun Defendants contend that Attorney Rohn falsely accused her three co-counsel in another matter of communicating to her statements of bias allegedly made by Judge Savage to those co-counsel. *Id.* at 7. The Sun Defendants assert that, as a result of Attorney Rohn's actions, they were required to expend a "Herculean amount" of resources—including for legal research, discovery, and depositions—in responding to the Motion for Recusal. *Id.* at 2.

Attorney Rohn filed an Opposition arguing that Section 1927 sanctions should not be awarded against her. (Dkt. No. 799). Preliminarily, Attorney Rohn argues that, as a matter of law, the Sun Defendants cannot recover fees under 28 U.S.C. § 1927 because they improperly requested fees from Plaintiff rather than from Attorney Rohn, and thus, the sanctions charge lacks sufficient, particularized notice. *Id.* at 2. Then, on the merits, Attorney Rohn contends that the Recusal Motion was brought within the realm of zealous advocacy with evidence to support recusal. *Id.* at 9-10. She argues that despite the Court's denial of the Recusal Motion, "there is absolutely no basis to conclude that any factual or legal assertion in the motion was objectively unwarranted." *Id.* at 9-10. In this regard, Attorney Rohn maintains that there is "at least conflicting evidence" in the record regarding Vitalis' claims of bias. *Id.* at 14-15. Attorney Rohn further asserts that the Court's credibility findings in favor of her three co-counsel with regard to whether they had communicated negative statements to her allegedly made by Judge Savage does not mean that her position in seeking recusal was objectively unreasonable because she presented evidence contradicting their denials. *Id.* at 15.

Moreover, with regard to the Declarations, Attorney Rohn denies the Sun Defendants' claims that she manipulated her clients into filing false affidavits in support of Judge Savage's

recusal. *Id.* at 9. Attorney Rohn further argues that she "intentionally removed herself from the client's decision-making process," and that there was nothing improper regarding the process by which the firm obtained the Declarations. *Id.* Further, Attorney Rohn maintains that the "undisputed and overwhelming evidence" demonstrates that both she and her clients held a subjective belief that Judge Savage could not be fair and impartial. *Id.* at 16.

In their Reply to the Opposition, the Sun Defendants challenge Attorney Rohn's claim that she did not have sufficient, particularized notice for a sanctions award under Section 1927. (Dkt. No. 800 at 1-3). First, the Sun Defendants point to various sections of their Section 1927 Motion which requests fees against Attorney Rohn rather than Plaintiff. *Id.* at 1-2. Next, the Sun Defendants argue that Attorney Rohn's own Opposition addresses the bases for the Section 1927 sanctions, thus confirming that she had sufficient particularized notice. *Id.* at 2-3. On the merits, the Sun Defendants maintain that Attorney Rohn acted in bad faith in pursuing the Recusal Motion, arguing that Attorney Rohn's claims of having a subjective belief that Judge Savage was biased against her and her clients were doubtful because she "concocted false affidavits" and falsely claimed that her co-counsel had relayed to her that Judge Savage had made negative comments about her. *Id.* at 4. Accordingly, the Sun Defendants seek sanctions against Attorney Rohn in the amount of $91,348.10 in attorneys' fees and $8,940.80 in costs, for a total of $100,288.90. (Dkt. No. 800).

This matter was subsequently reassigned to the undersigned Judge. (Dkt. No. 842).

## II.    APPLICABLE LEGAL PRINCIPLES

The Third Circuit has held that due process requires that "[p]rior to sanctioning an attorney, a court must provide the party to be sanctioned with notice of and some opportunity to respond to the charges." *Jones v. Pittsburgh Nat. Corp.,* 899 F.2d 1350, 1357 (3d Cir. 1990) (internal citations

omitted); *see also In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 191 (3d Cir. 2002) ("The Due Process Clause of the Fifth Amendment requires a federal court to provide notice and an opportunity to be heard before sanctions are imposed on a[n] ... attorney."). Further, "[the Third Circuit] has held that "particularized notice is required to comport with due process." *In re Prudential*, 278 F.3d at 191 (quoting *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1225 (3d Cir. 1995)). "Particularized notice will usually require notice of the precise sanctioning tool that the court intends to employ." *In re Prudential*, 278 F.3d at 191. A district court in the exercise of its sound discretion must identify and determine the legal basis for each sanction charge sought to be imposed, and whether its resolution requires further proceedings, including the need for an evidentiary hearing. *Jones*, 899 F.2d at 1359. A motion for sanctions pursuant to 28 U.S.C. § 1927 provides "particularized notice" where counsel is notified through the motion itself that sanctions are brought for unreasonable and vexatious litigation. *See In re Prudential*, 278 F.3d at 192 (noting counsel had received particularized notice through the Section 1927 motion).

A district court may impose sanctions pursuant to 28 U.S.C. § 1927 and its inherent power to control the litigation before it. Section 1927 provides:

> "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

28 U.S.C. §1927. Thus, a court may impose sanctions under Section 1927 if it finds that an attorney has "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *Lewis v. Smith*, 480 F. App'x 696, 698 (3d Cir. 2012) (citing *In re Prudential*, 278 F.3d at 188).

"[T]he principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *In re Prudential*, 278 F.3d at 181 (citation and internal quotation marks omitted). To that end, the Third Circuit has included as a prerequisite "a finding of willful bad faith on the part of the offending attorney." *Id.* (citing *In Hackman v. Valley Fair*, 932 F.2d 239, 242 (3rd Cir. 1991) ("[A] finding of willful bad faith on the part of the offending lawyer is a prerequisite . . . [for imposing sanctions under 28 U.S.C. § 1927] . . . ."); *Baker Industr.*, *Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208 (3d Cir. 1985) ("[W]e conclude that before attorneys' fees and costs may be taxed under [S]ection 1927, there must be a finding of willful bad faith on the part of the offending attorney."). "Indications of . . . bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Lewis*, 480 F. App'x at 698 (citing *In re Prudential*, 278 F.3d at 188). "Sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009) (citing *LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC*, 287 F.3d 279, 289 (3d Cir. 2002))*; see also Baker Industr.*, 764 F.2d at 208) ("We too read [S]ection 1927 to require a showing of actual bad faith before attorneys' fees may be imposed. If it were otherwise, an attorney who might be guilty of no more than a mistake in professional judgment in pursuing a client's goals might be made liable for excess attorneys' fees under [S]ection 1927."); *Bethea v. Merchants Com. Bank,* Civil Action No. 11-51, 2014 WL 4636692, at *1 (D.V.I. Sept. 17, 2014) (quoting *Grider*, 580 F.3d at 142) ("Bad faith and intentional misconduct are distinct from 'misunderstanding, bad judgment, or well-intentioned zeal'. . . .")*.*

Some courts, including district courts within the Third Circuit, have found that sanctions under Section 1927 with its bad faith component must be proved by clear and convincing evidence. *See Liebowitz v. Bandshell Artist Mgmt*., 6 F.4th 267, 286 n.22 (2d Cir. 2021) ("[A] showing of bad faith by clear and convincing evidence is a prerequisite to imposing sanctions under . . . [Section] 1927 . . . ."); *Hammervold v. Blank*, 3 F.4th 803, 811 (5th Cir. 2021) (citing *Bryant v. Military Department of Mississippi*, 597 F.3d 678, 694 (5th Cir. 2010) ("Sanctions under 28 U.S.C. § 1927 are punitive in nature and require clear and convincing evidence  . . . ."); *TZE Glob. Dis Ticaret A.S. v. Papers Unlimited, Inc*., Civil Action No. 20-2600, 2024 WL 3742715, at *8 (E.D. Pa. Aug. 9, 2024) (quoting *Johnson v. Smithkline Beecham Corp*., Civ. No. 11-5782, 2015 WL 1004308, at *7 (E.D. Pa. Mar. 9, 2015)) ("[T]he party seeking the imposition of sanctions [under 28 U.S.C. § 1927] must show by clear and convincing evidence that they are warranted."); *Deardorff v. Cellular Sales of Knoxville*, Inc., No. CV 19-2642, 2023 WL 3767734, at *8 (E.D. Pa. June 1, 2023) (same); *Hightower v. Ingerman Mgmt. Co*, Civil Action No. 17-08025, 2022 WL 19266260, at *4 (citing *Younes v. 7-Eleven,* 312 F.R.D. at 692, 703 (D.N.J. 2015)) (noting that for Section 1927 sanctions to be imposed "[b]ad faith and intentional misconduct . . . must be shown by clear and convincing evidence.")); *Hanko v. Aspen Dental Assoc. of NEPA, PLLC*, Civil Action No. 3:18-1322, 2020 WL 6445984, at *3 (M.D. Pa. Nov. 3, 2020) (citing *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig*., 469 F. Supp. 3d 357, 360 (E.D. Pa. 2020)) ("A finding of bad faith, proved by clear and convincing evidence, usually is required for sanctions imposed under § 1927 . . . ."); *Pop Test Cortisol, LLC v. Univ. of Chicago*, Civil Action No. 14-7174, 2015 WL 5089519, at *9 (D.N.J. Aug. 27, 2015) (noting that for sanctions under Section 1927 "it is the defendant's burden to show through clear and convincing evidence that plaintiff's conduct indeed constitutes bad faith or intentional misconduct."); *Sutton v. Am. Fed'n of State*, No. Civ. A. 96-

13

6065, 1997 WL 34663, at *7 (E.D. Pa. Jan. 27, 1997) (imposing sanctions pursuant to Section 1927 under clear and convincing evidence standard).

While it does not appear that the Third Circuit has opined on whether the clear and convincing evidence standard applies in the Section 1927 context, the Court will adopt that standard as in the cases cited above. The Court finds, however, that even if the preponderance of the evidence standard applies, this would not alter the Court's conclusions reached herein, in view of the willful bad faith and the intentionality of the misconduct that must be shown regardless of which legal standard applies.

"Clear and convincing evidence is an intermediate standard of proof, requiring more than the preponderance standard used in most civil cases and less than the 'beyond a reasonable doubt' used in most criminal cases." *Bellardine v. Ross*, No. CV 17-2264, 2018 WL 3642223, at *4 (E.D. Pa. Aug. 1, 2018) (citing *King v. Banner*, Civil Action No. 07-704, 2010 WL 3656030, at *2 (E.D. Pa. Sept. 17, 2010)). It is evidence that is 'so clear, direct, weighty and convincing as to enable the [fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" *E.E.O.C. v. U.S. Steel Corp.*, 877 F. Supp. 2d 278, 292 n.26 (W.D. Pa. 2012) (quoting *United States Fire Ins. Co. v. Royal Ins. Co.*, 759 F.2d 306, 309 (3d Cir. 1985)).

It has been recognized that courts should exercise restraint in imposing sanctions under Section 1927, because "[t]he power to sanction under § 1927 necessarily carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Antoniak v. Armstrong*, No. CV 18-1263, 2020 WL 2539194, at *7 (E.D. Pa. May 19, 2020) (citing *LaSalle Nat. Bank, LLC.*, 287 F.3d at 289). That is, courts should exercise this sanctioning power "only in instances of a serious and studied disregard for the orderly process of justice." *LaSalle,*

287 F.3d at 288 (citation and internal quotation marks omitted); *see Hackman*, 932 F.2d at 242 (explaining that, for an attorney's conduct to warrant sanctions pursuant to § 1927, such conduct must be "of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse judicial processes.") (citing *Colucci v. N.Y. Times Co.*, 533 F. Supp. 1011, 1014 (S.D.N.Y. Mar. 10, 1982)).

## III.     DISCUSSION

### A.     Notice and Opportunity to Be Heard

As a preliminary matter, the Court finds that Attorney Rohn had sufficient, particularized notice of the allegations and conduct for which the Sun Defendants seek sanctions. *See In re Prudential*, 278 F.3d at 191. Here, Attorney Rohn received notice in the form of the Sun Defendants' Motion for Section 1927 Fees. *See id.* (finding defendant received notice in the form of the motion for sanctions that identified the conduct at issue under Section 1927). The Motion expressly identifies and recites the statute by which the Sun Defendants seek relief. (Dkt. No. 795 at 2). The Sun Defendants also identified the nature of the conduct at issue in seeking the sanctions. *Id*. at 4-6. Attorney Rohn had, and took, the opportunity to respond to the arguments presented by the Sun Defendants when she filed her Opposition.

Moreover, Attorney Rohn's argument that the Sun Defendants erroneously sought fees against Plaintiff and not Attorney Rohn—as required by 28 U.S.C. § 1927—fails. It is true that in the first paragraph of the Motion for Section 1927 fees, the Sun Defendants erroneously state that they are seeking fees against Plaintiff. *Id*. at 1. However, on the next page, the Sun Defendants— citing to the statute—highlight the words "any attorney" in the text of the statute. *Id*.  Then, on the following page, the Sun Defendants state that, "[i]t is the attorney (not the party) who is personally liable for the costs and expenses associated with the misconduct …." *Id*. at 2. And ultimately, the

15

Sun Defendants' prayer for relief seeks "an order imposing sanctions against Attorney Rohn pursuant to 28 U.S.C.S. § 1927 . . . ." *Id.* at 9. Thus, although the Sun Defendants made an initial error, it is abundantly clear that they are seeking sanctions against Attorney Rohn. The Court therefore finds that Attorney Rohn had particularized notice of the allegations.

Finally, while it is true that "a court must provide the party to be sanctioned with notice of and some opportunity to respond to the charges," *Jones,* 899 F.2d at 1357, the Third Circuit has also held that the imposition of sanctions does not require a hearing in every case. *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 279 (3d Cir. 1999) (citing *Rogal v. American Broad. Companies,* 74 F.3d 40, 44 (3d Cir. 1996) and *G.J.B. & Assocs. v. Singleton*, 913 F.2d 824, 830 (10th Cir. 1990)); *see also Lewis*, 480 F. App'x at 700 (finding that district court did not abuse its discretion in declining to hold an evidentiary hearing on Section 1927 Motion). Further, the Third Circuit has held that it is within the district court's discretion to determine whether a hearing should be held. *See Angelico*, 184 F.3d at 279 (noting that the imposition of sanctions does not mandate an evidentiary hearing, and that the "concept of due process is flexible and whether a hearing is required depends upon the circumstances."); *Jones,* 899 F.2d at 1359 (noting that the district court in its discretion can "permit[] some cases to be disposed of on the record"); *G.J.B. Assocs.*, 913 F.2d at 830 ("[P]rior to imposing fees and costs upon an attorney for whatever reason, the district court should provide the attorney with an opportunity to fully brief the issue. An oral or evidentiary hearing, however, is not required.").

In its determination of whether sanctions are warranted against Attorney Rohn, the Court deems it appropriate to utilize the extensive written record—namely, the written submissions of the parties, the transcript of the three-day evidentiary hearing on the Motion to Recuse and references to other proceedings contained therein, and the exhibits admitted into evidence at the

recusal hearing. This record is sufficient because, among other things, the hearing provided live testimony over the course of three days regarding the evidence offered in support of the Recusal Motion and the manner in which Attorney Rohn pursued the Motion. The Court further finds that the briefing on the Recusal Motion, the recusal hearing, and the briefing on the instant Motion for Section 1927 Fees have provided both Attorney Rohn and the Sun Defendants with sufficient "opportunity to be heard" on the relevant considerations that bear on the question of sanctions. In short, having heard from the parties both in writing and via the transcript of the recusal evidentiary hearing, the record before the Court provides a sufficient foundation upon which to address the issues necessary to rule on the Section 1927 Motion. Accordingly, the Court concludes that an evidentiary hearing is unnecessary.

In view of the foregoing, the Court finds that Attorney Rohn has had appropriate particularized notice on the subject of the sanctions motion; that both the Sun Defendants and Attorney Rohn have had an opportunity to be heard on the existing record; and that an evidentiary hearing is unnecessary in view of the extensive record. Having resolved these preliminary issues, the Court will proceed to determine whether Section 1927 sanctions are warranted under the circumstances here.

### B.    Section 1927 Sanctions Analysis

At the outset, it is important to delineate the contours of this Opinion. The narrow issue before the Court is whether sanctions should be imposed against Attorney Rohn under 28 U.S.C. § 1927 for her actions in attempting to recuse Judge Savage from seven matters over which he was the presiding judge and Attorney Rohn was counsel. Thus, the Court's analysis of whether Section

1927 sanctions are warranted focuses on Attorney Rohn's actions as they relate to the recusal proceedings only.[7]

In light of the Sun Defendants' argument that Attorney Rohn filed and pursued the Recusal Motion in bad faith, the Court has divided its analysis into two parts: 1) whether Attorney Rohn is subject to sanctions for her decision to file the Recusal Motion; and 2) whether Attorney Rohn is subject to sanctions for the manner in which she pursued Judge Savage's recusal.[8] In addressing these issues, the Court will focus on the vexatious and bad faith elements of a Section 1927 claim because consideration of these elements is sufficient to resolve this matter.[9] *See Baker Industr.*, 764 F.2d at 208.

### 1. The Decision to File the Recusal Motion

The Sun Defendants argue that the Recusal Motion was "factually specious and legally meritless" (Dkt. No. 795 at 1), and its allegations "manifestly false" (*id.* at 2). In the Section 1927 context, the Court construes this argument to mean—in the words of the Fifth Circuit—that the

---

[7] In other words, this Opinion does not address or consider as part of its analysis whether Attorney Rohn could have been, should have been, or was in fact sanctioned for any conduct during the *Vitalis* trial or the associated pre-trial proceedings, or for her conduct in any of the cases for which Attorney Rohn sought Judge Savage's recusal. Dkt. No. 795 at 4, n.2.

[8] The issue before the Court is distinct from the issue that was before Judge Savage as to whether he should be recused. Thus, the fact that the Recusal Motion was denied does not mean that the filing and/or manner of pursing the motion was in bad faith and thus subject to sanctions. *See, e.g.*, *Sweetland v. Bank of Am. Corp.*, 241 F. App'x 92, 99 (4th Cir. 2007) ("And, although we ultimately held that the motion to recuse was without merit … we do not view the basis for the motion to be so lacking in potential merit at the time it was filed as to rise to the level of having been filed in bad faith.").

[9] Thus, the Court need not, and will not address the multiplicity and increase of costs elements of a Section 1927 claim.

Motion was "patently meritless," *Hammervold*, 3 F.4th at 811, and the filing thereof provides grounds upon which to find that Section 1927 sanctions are warranted.

    To prevail on this argument, the Sun Defendants must establish by clear and convincing evidence that Vitalis had no basis in fact and law to file a recusal motion.[10] Accordingly, the clear and convincing evidence standard must be considered against the backdrop of the legal standard for recusal motions. In that regard, Vitalis relied, *inter alia*, on 28 U.S.C. § 455(a) in seeking recusal. "Whenever a judge's impartiality 'might reasonably be questioned' in a judicial proceeding, 28 U.S.C. § 455(a) requires that the judge disqualify himself." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004) (internal citations omitted). "The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *Id.*

    Based on the Court's review of the record—the essence of which is provided below through the testimony of various witnesses—the Court finds that there was sufficient evidence offered by Attorney Rohn in support of a legally cognizable claim for recusal such that the Court cannot conclude, by clear and convincing evidence or otherwise, that the allegations in the Recusal Motion were "factually specious and legally meritless" for purposes of imposing sanctions under

---

[10] As noted earlier, Section 1927 sanctions require a finding of "willful bad faith on the part of the offending attorney." *In re Prudential*, 278 F. 3d at 188 (citing *Zuk v. E. Pennsylvania Psychiatric Inst. of the Med. Coll. of Pennsylvania*, 103 F.3d 294, 297 (3d Cir. 1996)). In quoting from *Administrator-Benefits for ExxonMobil Savings Plan v. Williams*, 2009 WL 5204482 (D.V.I. Dec. 21, 2009), the Sun Defendants acknowledge the heavy burden which they face: "Section 1927 sanctions require a finding of willful bad faith, not merely a showing of objectively unreasonable conduct . . . Simply filing a frivolous motion is not alone enough to provoke 1927 sanctions; rather, bad faith conduct is required." (Dkt. No. 795 at 3). Therefore, a critical hurdle that the Sun Defendants must overcome is demonstrating that Attorney Rohn filed and/or pursued the Recusal Motion in bad faith. *See, e.g.*, *Lewis*, 480 F. App'x at 698 (citing *In re Prudential*, 278 F.3d at 188).

19

Section 1927. Nor can the Court conclude that the Recusal Motion was filed in bad faith. Accordingly, the Court finds that Section 1927 sanctions are not warranted against Attorney Rohn for the filing of the Recusal Motion.

### a.    Plaintiffs' Allegations

Attorney Rohn testified that the filing of the Recusal Motion was preceded by a breakdown in the relationship between her and Judge Savage. She stated that "there was a definite change" in their relationship after she had written a letter to Chief Judge Gómez complaining about the alleged unilateral scheduling of matters by visiting judges. (*Wallace*, Dkt. No. 455 at Tr. 381:2-Tr. 381:22).[11] According to Attorney Rohn, the relationship between her and Judge Savage "got much worse" after she filed an appeal in *McNamara v. Kmart Corp.*, Civil Action No. 2008-0018, *id.* at Tr. 381:22-Tr. 381:23, and refused to withdraw it notwithstanding Judge Savage's alleged requests that it be withdrawn and his alleged statement that if she continued with the appeal, he would be forced to issue an opinion that would be "bad" for her experts in that case and others. *Id.* at Tr. 385:2-Tr. 385:9; Tr. 385:25-Tr. 386:5. Attorney Rohn testified that her interactions with Judge Savage changed "drastically" such that he denied her motions to continue certain hearings notwithstanding her pre-scheduled travel, *id.* at Tr. 386:15-Tr. 386:24; "began to make derogatory

---

[11] Attorney Rohn also testified about a letter that she wrote directly to Judge Savage dated March 16, 2010. (*Wallace*, Dkt. No. 456 at Tr. 132:8-Tr. 132:10). In the letter, Attorney Rohn said that "[she] [would] file [a] complaint in each case to which [Judge Savage] [was] assigned and with which [Attorney Rohn] [was] involved." (Dkt. No. 713-14 at 4). She testified that she communicated directly with him because she "was attempting to cause Judge Savage as little embarrassment as possible . . . and try[ing] to work this out without harming his reputation in any way." *Id.* at Tr. 187:17-Tr. 187:19. When confronted with the *ex parte* nature of this communication during cross-examination at the recusal hearing, Attorney Rohn stated: "[O]n hindsight . . . it would have probably been advisable to copy the other attorneys, but [she] was really trying not to make this something that harmed the Judge in any way." *Id.* at Tr. 187:20-Tr. 187:23.

statements about [her] at hearings," *id.* at Tr. 386:25-Tr. 387:2; and "took what [she] considered to be unintentional mistakes and attempted to make them intentional," *id.* at Tr. 387:10-Tr. 387:11.

Attorney Rohn further testified that Judge Savage's alleged negative conduct and bias extended to the *Wallace and Vitalis* trials. Regarding the *Wallace* trial, Attorney Rohn described Judge Savage's behavior as "angry, nasty, and venomous." (*Wallace,* Dkt. No. 455 at Tr. 389:10). She claimed that Judge Savage "went out of his way to point out to the jury facts that were harmful to her." *Id.* at Tr. 389:13-Tr. 389:14. Attorney Rohn also testified that in her view, Judge Savage's verbal and non-verbal cues communicated to the jury that he "didn't like [her] and didn't think [she] was a very worthy attorney or someone to be trusted." *Id.* at Tr. 390:5-Tr. 390:11. Attorney Rohn also took issue with Judge Savage's "demeanor towards [her], [his] pacing, [and] the way [he] spoke to [Miss Wallace] . . . and [his] anger and shortness with [Attorney Rohn] when [he] spoke to [her] in front of the jury."[12] *Id.* at Tr. 391:15-Tr. 391:22.

Attorney Rohn testified that in *Vitalis*, Judge Savage displayed a personal bias towards her, by interrupting her "several times in [her] opening [statement]"[13] (*Wallace,* Dkt. No. 455 at Tr. 403:19); "glar[ing]," "scowl[ing]," "growl[ing]," and "yell[ing]" at her in front of the jury (*id.* at Tr. 405:18-Tr. 405:20); and interrupting her witnesses such that they could not complete their

---

[12] Attorney Rohn testified that, as a result of these alleged displays of bias towards her in *Wallace*, she refrained from handling and instead asked her associate, Ryan Greene, Esq. ("Greene") to handle the proceedings in another matter over which Judge Savage was presiding. (*Wallace,* Dkt. No. 455 at Tr. 392:24-Tr. 393:5).

[13] During her testimony, Attorney Rohn pointed to the portions of the trial transcript, noting that defense counsel had objected several times during her opening statement causing interruptions by Judge Savage; that Judge Savage had interrupted her in the absence of objections from defense counsel; and that Judge Savage made comments during those interruptions in which she said the record does not reflect the tone of his voice or his looks to the jury. (*Wallace*, Dkt. No. 455 at Tr. 411:5-Tr. 411:8; Tr. 411:23-Tr. 412:5; Tr. 412:11-Tr. 412:15; Tr. 412:18-Tr. 412:24; Tr. 419:23-Tr. 419:25; Tr. 420:4-Tr. 420:18; Tr. 421:4-Tr. 421:16; Tr. 421:24-Tr. 422:2; Tr. 422:3-Tr. 422:4).

statements while giving their testimony (*id.* at Tr. 405:22-Tr. 405:23). Attorney Rohn also pointed to various parts of the trial transcript that she claimed reflected evidence that Judge Savage interrupted her and her witnesses. *See, e.g., id.* at Tr. 408:19-Tr. 413:3.

In describing the actions that she took prior to filing the Recusal Motion, Attorney Rohn testified regarding her written and oral communications with Chief Judge Gómez. (*Wallace,* Dkt. No. 456 at Tr. 25:5-Tr. 26:10). Attorney Rohn also stated that she contemplated filing a judicial complaint, but she did not do so. *Id.* at Tr. 26:11-Tr.26:13; Tr. 133:5-Tr. 134:7.

Turning to Vitalis, his testimony in support of recusal was essentially grounded in his alleged observations that "[Judge Savage] was not being fair to [Attorney Rohn] and [Vitalis]." (*Wallace*, Dkt. No. 454 at Tr. 32:22-Tr. 32:23). Vitalis testified that Judge Savage had "screamed" and "yelled" at Attorney Rohn, and paced the floor while Attorney Rohn questioned Vitalis' witnesses. *Id.* at Tr. 33:2-Tr. 33:3. Perceiving an alleged difference in treatment of witnesses, Vitalis also testified that "Judge Savage was rude to [his] witnesses" and interrupted Attorney Rohn's cross-examination of defense witnesses," *id.* at Tr. 33:12-Tr. 33:16, but was "polite to the defendant's witnesses and counsel," never yelling or screaming at them, *id.* at Tr. 33:24-Tr. 34:3.[14] Vitalis described Judge Savage's tone of voice as "rude" and "very angry" when addressing Attorney Rohn. *Id.* at Tr. 40:13. Vitalis also expressed his belief that the jury was affected by Judge Savage's alleged bias based on Vitalis' observation that each time Judge Savage shouted at

---

[14] During her testimony, Wallace similarly testified that she found Judge Savage's demeanor towards her, her witnesses, and Attorney Rohn to be objectionable. Wallace stated that during the trial Judge Savage was "very rude" to Attorney Rohn (*Wallace,* Dkt. No. 454 at Tr. 267:17); looked at Attorney Rohn with "disdain" and "turn[ed] his body, turn[ed] his face . . . as if he's disgusted with what [Attorney Rohn was saying]" (*id.* at Tr. 268:13-Tr. 268:16); and interrupted Wallace's witnesses in the middle of their testimony (*id.* at Tr. 268:2-Tr. 268:4). On the other hand, Wallace testified that Judge Savage would allow defense counsel to speak freely and did not make facial gestures towards them. *Id.* at Tr. 269:19-Tr. 270:2.

22

Attorney Rohn, the jury looked "kind of shocked, like [Attorney Rohn] was telling a lie," and "upset," and they "shook their heads when he made statements." *Id.* at Tr. 35:6-Tr. 35:9.

There was also testimony from others directly involved in the *Vitalis* trial. An expert witness for Plaintiff, Chester D. Copemann, Ph.D. ("Copemann"), testified that Judge Savage had "behaved in ways [with Attorney Rohn] that [he had] never seen a judge behave with attorneys before." (*Wallace*, Dkt. No. 454 at Tr. 174:18-Tr. 174:20). Copemann said that "he noticed that [Judge Savage] was interruptive with [Attorney Rohn]," and "seemed hostile and angry, and at times demeaning." *Id.* at Tr. 174:17-Tr. 174:18. Copemann further asserted that he observed "shouting, loud voice, raising of the voice, [and] facial expressions that seemed to suggest that [Judge Savage] was angry and/or disgusted with [Attorney Rohn]." *Id.* at Tr. 174:22-Tr. 174:25. Based on his "occasional glances" at the jury (*id.* at 8), Copemann said that he observed that "jurors would raise their eyebrows;" "open up their eyes wide;" and "sort of rear back in the chair when hostile transactions took place between [Attorney Rohn] and Judge Savage" (*id.* at Tr. 177:13-Tr. 177:21). Further, Copemann claimed that while Attorney Rohn's behavior was "challenging," he did not "detect any hostility in [Attorney Rohn's] voice;" "any hostile motions or actions;" or "any screaming or yelling, or [any] kind of vociferousness on [Attorney Rohn's] part." *Id.* at Tr. 178:5-Tr. 178:9. Instead, Copemann asserted that Attorney Rohn's "behavior was always within the demeanor of the Court that [he had] always seen" and described her as being "polite." *Id.* at Tr. 178:2-Tr. 178:4.

Martial Webster, Esq. ("Webster") assisted Attorney Rohn in selecting the *Vitalis* jury and participated in the trial thereafter.[15]  Webster testified that Judge Savage did not allow Attorney

---

[15] Webster testified that he was asked to assist with jury selection by Attorney Rohn because she anticipated "hav[ing] some problems with Judge Savage." (*Wallace*, Dkt. No. 454 at Tr. 224:6-Tr. 224:10; Tr. 224:16-Tr. 224:18). After jury selection, Webster said that he participated as counsel

Rohn to explain the case to the jury since Attorney Rohn had difficulty presenting her opening statement and closing argument without interruption. (*Wallace*, Dkt. No. 454 at Tr. 225:15-Tr. 225:22; Tr. 233:24-Tr. 234:7). Webster also stated that he thought that Judge Savage's facial expressions were different towards Attorney Rohn as compared to the jury and Webster. *Id.* at Tr. 227:2-Tr. 227:5. Webster said that Judge Savage was "mean" and "displayed hostility" towards Attorney Rohn, but was "nice" to the jury and to Webster. *Id.*  In sum, Webster concluded that he thought "the difficulty in [the *Vitalis* case] [was] the hostility between [Judge Savage] and [Attorney Rohn]. *Id.* at Tr. 239:22-Tr. 239:23.

Ryan Greene, Esq. ("Greene"), Attorney Rohn's associate, testified about in-person and telephone communications that he allegedly had with Judge Savage. In so doing, he stated that Judge Savage made certain statements about Attorney Rohn during private in-person conversations with him. (*Wallace*, Dkt. No. 456 at Tr. 226:19-Tr. 226:23). Greene testified that Judge Savage stated to him that it was "smart not to bring [Attorney Rohn] down there;" "smart for [Attorney Rohn] not to appear before [Judge Savage];" and "that [Attorney Rohn] had a problem with the authority figures, or men in authority." *Id.* at Tr. 226:19-Tr. 226:21. Greene also testified that there was another in-person conversation in which Judge Savage referred to Attorney Rohn as "that woman." *Id.* at Tr. 227:14-Tr. 227:16; Tr. 228:7-Tr. 228:9. Greene further recounted that during an in-person conversation with Judge Savage, he learned that Judge Savage had apparently spoken with another judge about Attorney Rohn, and that Judge Savage stated that "[the other judge] did not like [Attorney Rohn] either, but that Judge Savage had told [the other judge] [that] [Greene] was okay, and [that] [Greene] was a good guy." *Id.* at Tr. 229:9-Tr. 229:15.

---

in the trial because "[Attorney Rohn] thought [she] was going to have a difficult time with the Judge." *Id.* at Tr. 224:20-Tr. 224:22.

Greene also testified about a telephone call that Judge Savage allegedly made to him at his law firm's office shortly after the Recusal Motion was filed.[16] (*Wallace*, Dkt. No. 456 at Tr. 223:20-Tr. 224:24).[17] Greene testified that "the substance of [Judge Savage's] call was to check in on [him], and that [Judge Savage] knew [Greene] was in a tough spot, and that the fact that the recusal motions had been filed, and that the affidavits were suborned and perjured and would be investigated." *Id.* at Tr. 223:24-Tr. 224:4. Greene also testified that Judge Savage offered Greene assistance with finding a job in Philadelphia, if needed. *Id.* at Tr. 224:4-Tr.224:6. When asked what else Judge Savage had communicated to him during the alleged phone call, Greene testified that Judge Savage said words to the effect that Attorney Rohn would not be practicing law much longer. *Id.* at Tr. 224:19-Tr. 224:21; Tr. 265:7-Tr. 265:19. Greene further testified that Judge

---

[16] Greene prefaced his testimony regarding the alleged phone call by saying: "[T]his is difficult to talk about. I'm under oath. I don't want to talk about a number of these things, but I'm sworn to tell the truth." (*Wallace,* Dkt. No. 456 at Tr. 223:12-Tr. 223:16).

[17] Greene testified that he told his father about the alleged phone call shortly after the call, perhaps "even the same day, [or] the following day," and that he told his mother about the call "within probably three weeks, [or] two weeks." (*Wallace,* Dkt. No. 456 at Tr. 257:17-Tr. 257:19). Greene said that he told a friend, another local attorney, about the call around the same time he told Attorney Rohn, which was the week prior to the recusal hearing. *Id.* at Tr. 259:2; Tr. 260:14-Tr. 260:21.

In recounting why he told his parents about the alleged telephone conversation with Judge Savage, Greene testified: "Because I needed their advice, and I just wanted to tell them something. I felt that I was in a difficult spot with the practice of law. And specifically with the situation that I'm referring to in this testimony, because you know, I felt like I was damned if I did, I was damned if I didn't. If I told the truth on one hand, it's going to be, it could be detrimental to me. It's very difficult for a twelve-year lawyer to say things that, indeed, happened that I'm testifying about with a Federal District Court Judge, particularly when I've had a relationship with the Judge, and have considered that to be a very cordial relationship. And that now these motions have been filed, and the Judge is checking on me, and I don't want to run afoul of him, but yet, I don't want to not take care of the clients, or breach a duty to the clients. So, I know I'm emotional about it, because it's a tough situation. But I've decided to, after getting advice, just to follow my heart and let it fall, where it may, whatever happens. But my duty is to the client in this situation." *Id.* at Tr. 230:10-Tr. 231:6.

Savage stated that he would not "go into the conversations that he and [Greene] had had in chambers," and also that "he wasn't going to recuse." [18] *Id.* at Tr. 224:20-Tr. 224:24.[19]

      **b.**      **The Sun Defendants' Response**

To be sure, there were challenges to various aspects of the evidence presented by Attorney Rohn through questioning of the witnesses by counsel for Defendants and Judge Savage, as well as by evidence offered by Defendants.

There was extensive cross-examination of Attorney Rohn aimed at challenging her credibility. For example, questions were posed regarding a pending criminal plea, (*Wallace,* Dkt.

---

[18] During Greene's testimony regarding the alleged phone call from Judge Savage, there was a seemingly testy exchange among Greene, Judge Savage, and Attorney Rohn where Greene was interrupted when he sought to put on the record that Judge Savage was looking at him (*Wallace*, Dkt. No. 456 at Tr. 224:7-Tr. 224:8); Judge Savage stated that he was looking at Greene "because this is outrageous" and "to see what he has to say . . . [for purposes of] judging credibility;" *id.* at Tr. 225:11-Tr. 225:13; and Attorney Rohn then claimed that Judge Savage was staring at Greene "angrily" and "in an attempt to intimidate him," *id.* at Tr. 225:14-Tr. 225:15. Greene then stated: "If I may say, Your Honor, I am testifying to everything that I recall about that conversation. It's extremely difficult for me to do so. I've had a, I felt, a good relationship with Your Honor. And this is why I didn't want to be in this position at all, to testify concerning these matters, but I've been called to do so, and I don't like it one bit, but I'm telling the truth for the audience and the appeals to decide. And if it upsets Your Honor . . . I'm sorry . . . ." *Id.* at Tr. 225:16-Tr. 225:24. Greene also stated: "Your Honor, this is, this is extremely difficult, I say to you, man to man." *Id.* at Tr. 224:14-Tr. 224:15.

[19] Judge Savage later asked Greene: "How does [the alleged conversation] relate to the recusal motion?" (*Wallace,* Dkt. No. 456 at Tr. 270:4-Tr. 270:5). Greene responded, "Your Honor, it relates to the recusal motion because . . . Your Honor had already decided or communicated to me that [you weren't] going to get out of the cases." *Id.* at Tr. 270:9-Tr. 270:13. Greene also testified that the purpose of relating the conversation was "to the extent that the Court or any court determines that anything said during that conversation goes to extra judicial bias, that's another point of relevance." *Id.* at Tr. 271:2-Tr. 271:5.

Greene's testimony was not mentioned in the Recusal Opinion. At a separate hearing held on February 7, 2012—over five months after the Recusal Opinion had been issued—Judge Savage denied its truthfulness, stating: "Ryan Greene's testimony regarding the content of an alleged phone conversation and other conversations were not true. And that's that." (Dkt. No. 833 at Tr. 63:15-Tr. 63:19).

No. 456 at Tr. 42:11-Tr. 43:24); prior sanctions for misrepresentation, *id.* at Tr. 121:7-Tr.128:5; prior attempts to recuse judges, *id.* at Tr. 67:19-Tr. 68:15; her threatened suit against her co-counsel in the *James-Steele v. Ford Motor Company,* Civil Action No. 2004-0123 (*"James-Steele"*) matter based on their testimony at the recusal proceedings, *id.* at Tr. 49:20-Tr. 50:6;[20] alleged violations of the Court's pre-trial rulings, *id.* at Tr. 107:11-Tr. 120:14; and repeated references to alleged discrimination against "locals" notwithstanding the Court's ruling to the contrary, *id.* at Tr. 196:11-Tr.197:16.

There was testimony regarding the lack of knowledge by certain witnesses as to pertinent issues bearing on their testimony. For example, on cross-examination, Vitalis testified that Judge Savage demonstrated a personal bias in favor of Sun Constructors because "a lot of crucial evidence" was not admitted into evidence. (*Wallace,* Dkt. No. 454 at Tr. 44:2-Tr. 44:3). When asked during her cross-examination about Vitalis' testimony in this regard, Attorney Rohn disavowed that aspect of his testimony stating: "[H]e is a layman, but[] he [is] incorrect." (*Wallace*, Dkt. No. 456 at Tr. 214:10). Attorney Rohn further stated that Judge Savage's evidentiary rulings were not a basis for bias in the case. *Id.* at Tr. 214:14. In addition, Vitalis testified that part of the reason Judge Savage made unfavorable rulings in his case was due to the alleged personal bias against Vitalis. (*Wallace,* Dkt. No. 454 at Tr. 44:18-Tr. 44:21. However, when asked on cross-examination which motions with unfavorable rulings he was referring to that demonstrated a bias in favor of Defendants, or a bias against him and Attorney Rohn, Vitalis replied, "I can't be specific at this time." *Id.* at Tr. 45:13-Tr. 45:17.

Additionally, on cross-examination defense counsel challenged Webster's assertions that Judge Savage had simply prevented Attorney Rohn from presenting her arguments to the jury

---

[20] The testimony of the *James-Steele* co-counsel will be discussed further below.

during opening statements and closing arguments. (*Wallace*, Dkt. No. 454 at Tr. 238:16-Tr. 240:22). When asked, Webster noted that he did not participate in the *Vitalis* matter prior to trial, *id.* at Tr. 238:16-Tr. 238:18, and could not recall whether Judge Savage's interruptions of Attorney Rohn in front of the jury were grounded in pre-trial rulings that certain evidence was inadmissible, *id.* at Tr. 240:7-Tr. 240:12.

Certain witnesses testified that it was Attorney Rohn's own conduct during the *Vitalis* proceedings that was blameworthy. For example, David J. Cattie, Esq. ("Cattie")—counsel for the Sun Defendants—testified regarding Attorney Rohn's conduct during the *Vitalis* proceedings and during the recusal hearing. (*Wallace*, Dkt. No. 456 at Tr. 350:12-Tr. 362:12). When asked on direct examination whether he had observed conduct that he considered to be disrespectful to the Court during the final pre-trial conference or the motions *in limine* hearing, Cattie responded that when rulings were issued in favor of Sun Constructors, Attorney Rohn continued to argue the motion despite the fact that Judge Savage had issued a ruling; that Attorney Rohn spoke in "loud, harsh tones to . . . Judge [Savage];" and that Attorney Rohn "[threw] her hands up in frustration if she didn't like a ruling." *Id.* at Tr. 350:24-Tr. 351:2. Cattie also stated that [Attorney Rohn] "threw her glasses in disgust at the Judge." *Id.* at Tr. 351:2-Tr. 351:3. Further, Cattie opined that Attorney Rohn would attempt to manipulate the record, such as by claiming that Judge Savage had yelled at her. *Id.* at Tr. 351:3-Tr. 351:8.

Another witness, Joe Wiley ("Wiley"), General Counsel of Sun Constructors, Inc., testified that during hearings on motions *in limine*, he thought that Attorney Rohn was "pretty adamant about her position with respect to the motion," and that on more than one occasion, the Judge would indicate his ruling, and [Attorney Rohn] would take exception to the ruling." (*Wallace*, Dkt. No. 456 at Tr. 331:17-Tr. 331:21). Wiley said: "[I]t was pretty clear that [Attorney Rohn] was

28

expressing a great deal of frustration and aggravation to an extent that [he] had not really seen in a court between an attorney and a sitting judge." *Id.* at Tr. 331:21-Tr. 331:24. Based on his observations, Wiley opined that "Judge Savage insist[ed] that his court be conducted with professionalism and with decorum" (*id.* at Tr. 336:12-Tr. 336:14), but that it was Attorney Rohn who would provide "a flippant or even a smart Alec comment back to the Court" (*id.* at Tr. 338:9-Tr. 338:10).

When asked about Judge Savage's demeanor during the recusal hearings, Greg Allen, Esq. ("Allen"), one of Attorney Rohn's co-counsel in the *James-Steele* matter, said that "I think Judge Savage is a judge that controls the courtroom, but there was nothing that I saw that would be unusual . . . I've seen judges control the courtroom like that, that's normal." (*Wallace*, Dkt. No. 455 at Tr. 193:5-Tr. 193:8). When asked about Attorney Rohn's manner of speaking to Judge Savage during the recusal proceedings, Allen opined, "I don't think I would ask a Judge to speak up like that . . . I don't know how to describe [it] other than that's not something I would do." *Id.* at Tr. 193:16-Tr. 193:18.

In another instance, Judge Savage called to the witness stand and questioned a Court intern as someone who had observed the majority of the recusal hearing. (*Wallace,* Dkt. No. 460 at Tr. 10:8-Tr. 12:25). The intern testified that "there appeared to be contention in the court." *Id. at* Tr. 11:12-Tr. 11:13. However, he said that he did not observe facial expressions by Judge Savage that would have been "out of the ordinary" (*id.* at Tr. 12:2-Tr. 12:5), or that Judge Savage had screamed at anyone (*id.* at Tr. 12:11), but that "when everyone in the courtroom was talking at the same time … [Judge Savage] may have had to be assertive in order to gain control of the courtroom." *Id.* at Tr. 12:14-Tr. 12:15. The intern concluded that Judge Savage's actions were "to maintain order in the court and be fair and impartial." *Id.* at Tr. 11:24.

29

c.      **The Court's Findings**

As the foregoing amply demonstrates, there was a considerable amount of conflicting evidence on issues that could bear on any alleged bias by Judge Savage. The evidence was in conflict as it pertained to virtually every aspect of the challenged conduct, including Judge Savage's tone, demeanor, body language, facial expressions, treatment of Vitalis' and Wallace's witnesses, treatment of Attorney Rohn, and interruptions of Attorney Rohn and her witnesses. The evidence was also in conflict as it pertained to Attorney Rohn's own conduct. In addition to the conflicting evidence, Attorney Rohn also offered evidence of alleged bias through the testimony of Greene that was not contradicted on its merits nor mentioned in the Recusal Opinion.

The Court recognizes that—with the exception of Greene's testimony—the evidence presented by Attorney Rohn was rejected by Judge Savage in the Recusal Opinion. It was rejected, *inter alia,* as lacking in specificity (Dkt. No. 793 at 7); not supported by the record (*id.* at 8); a misunderstanding of what the case was about (*id.*); grounded in ignorance of Judge Savage's earlier rulings (*id.* at 9); equivocal and unobjective (*id.* at 9-10); misinterpretations of legitimate responses to Attorney Rohn's repeated attempts to introduce inadmissible and prejudicial evidence and her unprofessional and disrespectful conduct (*id.* at 10, 12); and the product of misinformation (*id.* at 17). However, as previously noted, the bias analysis in which Judge Savage was engaged is distinct from the Section 1927 analysis presently before this Court. *See* n.8, *supra*. That the evidence presented by Attorney Rohn was rejected by Judge Savage for purposes of the bias analysis is not, therefore, dispositive of the Section 1927 issue. It does not negate the fact that there was evidence presented in support of recusal; it does not render such evidence "patently meritless;" and it does not establish that such evidence was offered in bad faith.

In the final analysis, the Court finds that the evidence offered by Attorney Rohn presents a sufficient basis under the recusal legal standard to support the filing of a recusal motion. In other words, notwithstanding that there was contrary evidence presented by Defendants to almost all of the evidence presented by Attorney Rohn and that Judge Savage found that the Recusal Motion was without merit, the Court "does not view the basis for the motion to be so lacking in potential merit at the time it was filed as to rise to the level of having been filed in bad faith." *Sweetland*, 241 F. App'x at 99. Specifically, the evidence of record does not support the conclusion in either "clear, direct, weighty, and convincing terms," *E.E.O.C.*, 877 F. Supp. 2d at 292, or otherwise, that the allegations of the Recusal Motion were so "factually specious and legally meritless" as to constitute bad faith or intentional misconduct under Section 1927. Accordingly, the Court finds that the *filing* of the Recusal Motion does not provide grounds for the imposition of sanctions under Section 1927.

### d. The Sun Defendants' Bad Faith Arguments are Unavailing

In an attempt to demonstrate that Attorney Rohn acted in bad faith and thus sanctions are warranted, the Sun Defendants argue that Attorney Rohn *falsely claimed* that three of her co-counsel in *James-Steele* had relayed statements allegedly made by Judge Savage that reflected Judge Savage's bias against her and members of her law firm. (Dkt. No. 795 at 7). In that regard, the Sun Defendants rely on the Recusal Opinion—which concluded that the *James-Steele* attorneys had not communicated allegedly disparaging remarks from Judge Savage, nor indicate to Attorney Rohn that Judge Savage would not proceed with the *James-Steele* case as long as her firm was involved. *Id.* (citing Dkt. No. 793 at 23-24).[21] However, based on the Court's review of the record,

---

[21] Attorney Rohn testified at the recusal hearing that she had "multiple conversations with [her James-Steele co-counsel] about statements that Judge Savage had made to them that were extremely derogatory toward [her]." (*Wallace,* Dkt. No. 456 at Tr.18:23-Tr.18:25). She stated that

this issue is not so clear-cut as to conclude that bad faith was at play. Indeed, when placed into context with other evidence presented, the Court concludes that the Sun Defendants have failed to show bad faith.

By way of background, in an effort to gather information about Judge Savage, Attorney Rohn requested, by email dated March 1, 2010, that one of her co-counsel in the *James-Steele* matter, Christopher Glover, Esq. ("Glover") provide background information about the Judge. (*Wallace*, Dkt. No. 456 at Tr. 18:2-Tr.18:7; Dkt. No. 713-12).[22] Glover testified that he then called Richard Golumb, Esq. ("Golumb")—another co-counsel in *James-Steele*—to inquire about Judge Savage.[23] *Id.* Glover further testified that, following the conversation, he replied via email to

_____

following hearings in the *James-Steele* case, her stateside co-counsel in that case would "call [her], and give [her] an update, and tell [her] [that] Judge Savage said you're smart, not to bring that woman to the mediation." *Id.* at Tr. 19:2-Tr. 19:5. Attorney Rohn further testified that she was told by her co-counsel "that [Judge Savage] indicated that they should not be associated with [her];" that "they ought to get other counsel;" "[t]hat [Attorney Rohn] was not to be trusted;" that [Attorney Rohn] "was not a fitting lawyer to be associated with them;" and that Judge Savage "[r]eferred to [Attorney Rohn] as that woman." *Id.* at Tr. 19:5-Tr. 19:8. Attorney Rohn claims that her co-counsel generally discouraged her from appearing in the *James-Steele* matter. *Id.* at Tr. 20:12-Tr. 21:5. Attorney Rohn further testified that Glover and Allen "both recounted their observations of Judge Savage and his dislike for [her]," and that she and Glover had a discussion over dinner on "the statements that Judge Savage had been making about [her]." *Id.* at Tr. 20:7-Tr. 21:5.

[22] The record reflects that in the March 1, 2010 email, Attorney Rohn wrote to Glover requesting Glover's assistance in getting background information on Judge Savage. (Dkt. No. 713-12). Referring to the *Vitalis* trial, Attorney Rohn remarked that she had lost a case—describing it as "impossible to lose"—in front of Judge Savage, and that "the judge is a nightmare … he commented on the evidence, took an immediate hatred towards me … glared at me … made rude comments to me and about me in front of the jury, helped the defendant, barred just about any evidence that was helpful to the [plaintiff's] claims, and screamed at the top of his lungs at me while smiling and being cordial with [the] defendant." *Id.*

[23] Two of Attorney Rohn's co-counsel in *James-Steele*, Glover and Allen were shareholders at the same law firm, Beasley, Allen, Crow, Methvin, Portis & Miles in Montgomery, Alabama. (*Wallace*, Dkt. No. 455 at Tr. 13:13-Tr. 13:16); Dkt. No. 731-14 at 3. Golumb was a partner at Golumb & Honik in Philadelphia, Pennsylvania. *Id.* at Tr. 88:3-Tr. 88:4; Tr. 88:9-Tr. 88:10.

Attorney Rohn representing that Golumb has "personal experience" with Judge Savage and that: 1) Golumb considers himself a friend of Judge Savage; 2) Judge Savage is "capable of holding a personal[] vendetta;" and 3) Golumb believed that "Judge Savage would go out of his way to hurt someone that he did not like." *(Wallace,* Dkt. No. 455 at Tr. 29:21-Tr. 30:9; Tr. 34:2-Tr.34:10).

Given the context in which Attorney Rohn's inquiry about Judge Savage was made—namely, that she believed she was treated unfairly by Judge Savage (see n.22, *supra*)—Glover's response obviously poured fuel on the fire. And, the record reflects that this was exactly his intent. Indeed, at the recusal hearing, Glover testified that he had embellished his representations to Attorney Rohn regarding his conversation with Golumb in an effort to successfully market his firm as outside counsel.[24] (*Wallace*, Dkt. No. 455 at Tr. 29:23-Tr.30:3; Tr. 135:18-Tr. 135:19). Glover further testified that "this email [was] an embarrassment to [him], because … there are a lot of inaccuracies in [the email] and [he] was not proud to sit [there] and talk about it" (*id.* at Tr. 29:23-Tr. 29:35); that "[he] was telling … [Attorney Rohn] what [she] wanted to hear" in an effort to garner favor with her so they could do more business together (*id.* at Tr. 32:4-Tr. 32:8); and that he did not think that Golumb had told him—as stated in Glover's email to Attorney Rohn—that Golumb believed Judge Savage was capable of holding a personal vendetta or would go out of his way to hurt someone that he did not like (*id.* at Tr. 34:6-Tr. 34:10).

This testimony by Glover—at a minimum—places a cloud on his general credibility, including as it relates to his representation that he did not communicate to Attorney Rohn or members of her firm disparaging remarks purportedly relayed by Judge Savage to Glover and his co-counsel. Indeed, according to Glover, his email communication to Attorney Rohn was intended

---

[24] Glover testified, "I was marketing my law firm, and it was embarrassing. I'm not proud of this." (*Wallace,* Dkt. No. 455 at Tr. 34:13-Tr. 34:15).

to lend support to Attorney Rohn's belief that Judge Savage was biased against her. *See Wallace,* Dkt. No. 455 at Tr. 32:4-Tr.32:8 ("I was telling . . . you what you wanted to hear . . . [Y[ou were clearly upset with Judge Savage."). Accordingly, in assessing whether bad faith has been shown by clear and convincing evidence or otherwise, the alleged bad faith misrepresentations by Attorney Rohn—grounded in the assertion that Attorney Rohn made false claims regarding representations made to her by her co-counsel in the *James-Steele* case—must be evaluated in this context.

The alleged bad faith misrepresentations must also be evaluated in the context of Glover's acknowledgment that he regularly communicated with his co-counsel on issues that he never expected would resurface. In this regard, he testified as follows with regard to his response to Attorney Rohn's March 1, 2010 email: "But, you know, when I got around to typing [the email] up to [Attorney Rohn], I obviously, I obviously, you know, who would ever thought that two counsel working together, that somebody is ever going to read that email again. This is routine. Every case I do, we talk about, you know, issues to, between your co-counsel that you don't think will ever be seen again . . . ." (*Wallace,* Dkt. No. 455 at Tr. 30:10-Tr. 30:20). The implication here that Glover was willing to embellish his representation to Attorney Rohn, assuming that the email would not "be seen again," *id.* at Tr. 30:16, leaves considerable room for doubt as to whether Attorney Rohn in fact falsely represented what was communicated to her by her *James-Steele* co-counsel as the Sun Defendants claim, or whether, instead, there were "private" communications between Glover and Attorney Rohn of the nature described by Attorney Rohn, which Glover expected would never be uncovered.

This doubt is further reinforced by oral testimony and email correspondence among the relevant players. At the recusal hearing, Attorney Rohn testified that she had spoken to her *James-*

*Steele* co-counsel, Glover and Allen, prior to filing the Recusal Motion, and that they had asked her not to disclose all the things that they had told [her] Judge Savage had said to them." (*Wallace*, Dkt. No. 456 at Tr. 32:3-Tr. 32:16). According to Attorney Rohn, "they had requested that [she] protect them," *id.* at Tr. 25:15, because they were "afraid to anger Judge Savage as a Federal District Judge." *Id.* at Tr. 34:8-Tr. 34:10. Significantly, in an email dated May 24, 2010 from Attorney Rohn to her associate Greene, Attorney Rohn states, in part, "Please don't put anything they told us in it. Put in the motion that we are not filing in *James-Steele* as counsel will not be participating in that trial and counsel in that case do not oppose [J]udge [S]avage presiding over that trial." (Dkt. No. 731-11 at 1-2). This email was then forwarded by Greene to Glover with a message stating: "We are not going to do anything to hurt you in *James-Steele*," and noting further that Attorney Rohn was referring to herself as the counsel who would not participate in the trial.[25] *Id.* at 1. Thus, what the Sun Defendants characterize as bad faith misrepresentations by Attorney Rohn regarding disparaging remarks allegedly communicated by the *James-Steele* co-counsel must be considered in this context as well.

In view of the foregoing, the Court's bad faith analysis for purposes of Section 1927 cannot be reduced to simply accepting Glover's and Allen's denials that they communicated to Attorney Rohn disparaging remarks allegedly made by Judge Savage. Rather, in assessing the issue of alleged bad faith false statements by Attorney Rohn, it is important to consider Glover's and Allen's denials in the context of, and together with, the evidence detailed above. In other words, the denials must be considered in the context of Attorney Rohn's testimony to the contrary, as well as in the context of, and together with, Glover's embellished response to Attorney Rohn's March

---

[25] Attorney Carpenter, a member of Attorney Rohn's firm, was copied on this email. (Dkt. No. 731-11 at 1).

1, 2010 email; Glover's acknowledgment that he routinely engages in communications with his co-counsel that he never expects will see the light of day; Attorney Rohn's testimony that Glover and Allen requested that she not disclose the things they had told her that Judge Savage had said; Attorney Rohn's email to Greene directing him not to include in a motion being filed in *James-Steele* "everything they told us;" and Greene's forwarding of the email to Glover advising that Attorney Rohn's firm would not be "do[ing] anything to hurt [him] in *James-Steele*." When the *James-Steele* co-counsel's denials—upon which the Sun Defendants rely in alleging that Attorney Rohn made bad faith misrepresentations—are considered in the context of the totality of the evidence, the Court concludes that the Sun Defendants have failed to show by clear and convincing evidence or otherwise that any alleged misrepresentations rose to the level of bad faith.

The alleged bad faith misrepresentation concerning Attorney Rohn's and her firm's withdrawal from the *James-Steele* matter fares no better. This alleged misrepresentation, like the prior one, must also be considered in the context of other testimony and written evidence. Attorney Rohn testified that she was "contacted repeatedly" by Allen who communicated to her that "Judge Savage had ordered that [her] entire firm get out of the case." (*Wallace*, Dkt. No. 456 at Tr. 30:17-Tr. 30:23). Greene also testified that Glover had called him urging that Attorney Rohn be removed from the case based on what Glover was hearing from Judge Savage. *Id.* at Tr. 222:14-Tr. 222:23.[26] Another lawyer from Attorney Rohn's firm, Mary Faith Carpenter, Esq. ("Carpenter"), additionally testified that through oral and written communications with both Greene and Glover,

---

[26] Glover testified that he requested that Attorney Rohn withdraw her notice of appearance from the case and encouraged Golumb's appearance in the case. *Id.* at Tr. 46:20-Tr. 46:24. Allen testified that it was his decision to bring Golumb into the *Steele* case [and that] Judge Savage knew Golumb and would "know that [the lawyers] weren't bad people." *Id.* at Tr. 162:14-Tr. 162:20.

she had learned that Judge Savage wanted the complete withdrawal of Attorney Rohn's firm from the case. (*Wallace,* Dkt. No. 455 at Tr. 336:11-Tr. 336:18).

Further, in an email dated June 3, 2010 from Allen to Attorney Rohn, with a copy to Glover, Allen stated, "Judge Savage made it clear that since the recusal motion mentions your firm rather than just you, your withdrawal is not good enough." (Dkt. No. 731-14 at 3). In addition, Allen stated that although he had asked during the telephone conference with Judge Savage that Carpenter stay on as counsel "at least in a limited role," "[t]hat did not go over very well." *Id.* Allen expressed concern about the potential impact on the progress of the case, stating, "My fear is that the case may be continued . . . ." *Id.* [27]

In connection with the June 3, 2010 email, Allen testified at the recusal hearing that it was actually defense counsel who raised the issue regarding the withdrawal of Attorney Rohn's firm during a conference call with Judge Savage and Attorney Rohn's co-counsel in *James-Steele*. (*Wallace*, Dkt. No. 455 at Tr. 167:13-Tr. 167:19). Allen said that defense counsel "felt that [the recusal matter] can be an appeal issue, even if [Attorney Rohn] [was] not participating in the case, [as long as Attorney Rohn's] firm would be participating in the case." *Id.* at Tr. 167:16-Tr. 167:19. Glover similarly testified that the conflict "wasn't that [Judge Savage] had anything against

---

[27] Attorney Rohn further stated that "[Allen] had told her that Judge Savage had told [Allen] to threaten [Attorney Rohn] with his firm withdrawing from the case if [Attorney Rohn's] firm didn't agree to get out." (*Wallace*, Dkt. No. 455 at Tr. 30:19-Tr. 30:22). When queried about this allegation by Attorney Rohn on direct examination, Allen said, "I don't recall that at all." (*Wallace,* Dkt. No. 455 at Tr. 174:14-Tr. 174:17). Judge Savage then said, "[Y]ou said you don't recall. Either you did or you didn't?" *Id.* at Tr. 174:20-Tr. 174:21. Allen responded again that he did not recall telling Attorney Rohn that. *Id.* at Tr. 174:22. Judge Savage then asked: "Does that mean you didn't tell her that?" Allen replied, "I did not tell her that." *Id*. at Tr. 174:25.

Although Allen ultimately denied the allegation and Judge Savage credited the denial, Allen admitted that he had a discussion with Attorney Rohn about him withdrawing from the case; that he was "very frustrated;" and that he thought it would be in Miss James-Steele's interest that [his firm] go forward [with the case]." *Id.* at Tr. 175:11-Tr. 175:16.

[Attorney Rohn], but . . . what [defense counsel] was worried about if we lost [*James-Steele* was], that we would appeal that issue so long as [Attorney Rohn's] firm was involved." *Id*. at Tr. 46:11-Tr. 46:16.

While there is nothing in the record to suggest that Allen's and Glover's testimony in this regard is flawed or untrustworthy, the fact nonetheless remains that Attorneys Rohn, Greene, and Carpenter testified that, in their respective oral communications, Allen and Glover had attributed the demand for the withdrawal of Attorney Rohn and her firm to Judge Savage—not to defense counsel. Their testimony in this regard is supported to some extent by the June 3, 2010 email from Allen to Attorney Rohn, in which Allen states, "*Judge Savage* made it clear . . . ." in describing the need for both Attorney Rohn and her firm to withdraw from the *James-Steele* case. (Dkt. No. 731-14 at 3) (emphasis added). Thus, Allen's and Glover's testimony after-the-fact at the recusal hearing that it was really a defense counsel issue would not negate any earlier contrary impressions that they may have left in their oral and written communications. Under these circumstances, and in light of Allen's and Glover's denials regarding the content of their communications, the evidence is at best conflicting. Thus, this Court cannot conclude by clear and convincing evidence or otherwise that Attorney Rohn engaged in bad faith misrepresentations of what was allegedly communicated to her by Allen and Glover regarding Attorney Rohn and her firm's withdrawal from the *James-Steele* matter.

In view of the foregoing, the circumstances here are manifestly different from those in *In re Prudential*, 278 F.3d at 190-191, upon which the Sun Defendants rely, *inter alia*, for the proposition that Section 1927 sanctions are warranted here because Attorney Rohn "filed a baseless motion to recuse" (Dkt. No. 795 at 6), and "falsely attributed statements to [Allen and Glover] that were blatantly untrue," *id.* at 7. In concluding in Section III(B)(1)(c) above that the

filing of the Recusal Motion does not warrant sanctions, the Court discussed why the Recusal Motion cannot be deemed "baseless" for purposes of Section 1927 sanctions. Further, notwithstanding Glover's and Allen's denials, and the Sun Defendants' reliance thereon, the Court finds—for all of the reasons discussed in this section—that the conclusion that Attorney Rohn's testimony regarding her conversations with her *James-Steele* co-counsel was fabricated cannot be reached with the degree of certainty ascribed to it by the Sun Defendants[28] and required for a finding of bad faith conduct under Section 1927. Thus, unlike the Third Circuit's finding in *In re Prudential*, it is *not* the case that "[t]he course of conduct here allows for only one conclusion . . . ." *Id.* at 6 (quoting *In re Prudential*, 278 F.3d at 190).

Nor does the Sun Defendants' reliance on *Spolter v. Suntrust Bank*, 403 Fed. App'x 387, 389, 2010 WL 4608772, at *1 (11th Cir. 2010), aid their cause. As the Sun Defendants acknowledge, *Spolter* involved circumstances where the alleged judicial impropriety was grounded in attacks on the Judge's "faith and political affiliations;" "call[ing] into question the credentials of some of [the Judge's] former law clerks;" and allegations that "both [the Judge] and the Clerk's Office [] manipulated the case assignment of the entire Southern District of Florida for the sole purpose of ensuring [the Judge] receive[d] a disproportionate number of Spolter's cases." (Dkt. No. 795 at 5) (quoting *Spolter*, 403 Fed. App'x at 389). Those allegations are unlike those that are presented here. Moreover, the Court in *Spolter* found that Spolter had "failed to provide a mere scintilla of evidence supporting his claims of misconduct against [the Judge] or the Clerk's

---

[28] The Court acknowledges that, in this regard, the Sun Defendants relied exclusively on Judge Savage's finding in the Recusal Opinion that Attorney Rohn's testimony was false. *See* Dkt. No. 793 at 23 ("Rohn's testimony is false. None of the statements she swore had been made were ever uttered."). For purposes of this Court's Section 1927 analysis and based on its review of the record, the Court respectfully disagrees with the unequivocal nature of that finding.

Office." *Id.* Again, that is not the case here. As the Court previously found, there was sufficient evidence to support the filing of the Recusal Motion.

In short, the Sun Defendants' claims of bad faith misrepresentations by Attorney Rohn fail. Accordingly, those claims do not alter the Court's conclusion reached above that the Sun Defendants have failed to show that the filing of the Recusal Motion warrants sanctions under Section 1927.

### 2.    The Manner of Pursuing Recusal

The Court has concluded that the Sun Defendants have failed to carry their burden of establishing that the decision by Attorney Rohn to file the Recusal Motion warrants sanctions. The *manner* in which Attorney Rohn pursued the Motion, is, however, a closer call. In the final analysis, while the Court concludes that a certain aspect of Attorney Rohn's approach to the pursuit of Judge Savage's recusal—namely the mass recusal process—reflects bad judgment and overzealous advocacy, the Court finds that the Sun Defendants have failed to establish that Attorney Rohn's conduct rose to the level of bad faith or intentional misconduct as required under Section 1927. Accordingly, sanctions are not warranted under the circumstances here for the manner in which Attorney Rohn pursued Judge Savage's recusal.

Attorney Rohn's goal to have Judge Savage recused from seven cases over which he presided involved having the clients whom she was representing in those cases agree as to Judge Savage's alleged bias and lack of impartiality. This was accomplished through a process, led by Attorney Rohn's associates, in which Attorney Rohn's clients were put in touch—either in person or by telephone—with Vitalis and Wallace, so that Vitalis and Wallace could reveal to those clients their negative opinions about the Judge gleaned from their respective cases in which they had unfavorable outcomes. (*Wallace,* Dkt. No. 456 at Tr. 238:14-Tr. 238:16; Tr. 239:3-Tr. 239:20).

The obvious purpose of these scheduled interactions was to have Vitalis and Wallace influence Attorney Rohn's other clients—who otherwise had little or no basis for opining about Judge Savage—such that they would agree to seek Judge Savage's recusal from their respective cases. The result was predictable—once Vitalis and Wallace had planted the seeds of doubt as to Judge Savage's impartiality, the other clients would agree to have Judge Savage removed from their respective cases. Then came the rather perfunctory Client Declarations prepared by lawyers in Attorney Rohn's firm and using virtually identical language with a simple script expressing each client's belief that Judge Savage would not be impartial, based on what the client had heard from Vitalis and Wallace.[29] This was followed by uninformed testimony by those clients at the recusal hearing that was very short on any specifics from their own cases that would suggest bias.[30] This result was not surprising in view of the candid acknowledgment in each Client Declaration that, in seeking recusal, the declarants had relied on having "[heard] facts related to [them] by Ms. Idona

---

[29] The Client Declarations state that the declarants seek Judge Savage's recusal because "[they] do not believe that [Judge Savage] will be impartial in hearing any matter in [their] case[s], or that [Judge Savage] is impartial" and that Judge Savage "has demonstrated a personal prejudice against [their] chosen counsel Lee J. Rohn, and a bias in favor of the Defendant." (Dkt. Nos. 579-14 at ¶ 3; 579-15 at ¶ 3; 579-16 at ¶ 3; 579-17 at ¶ 3; 579-20 at ¶ 3). As acknowledged in the Declarations by each client, their conclusions in this regard were based on having "[heard] facts related to [them] by Ms. Idona Wallace and Mr. Mark Vitalis . . . ." *Id.* at ¶ 1.

[30] For example, one of Attorney Rohn's clients, Glenford Ragguette ("Ragguette"), explained that he moved for recusal after hearing about Vitalis' and Wallace's experiences in their trials, and that he did not want Judge Savage on his case based on what he had learned from Vitalis and Wallace. (*Wallace,* Dkt. No. 455 at Tr. 218:3-Tr. 218:9; Tr. 218:16-Tr. 218:17; Tr. 225:12- Tr. 225:16; Tr. 231:23). However, when asked whether Judge Savage had demonstrated personal prejudice against Attorney Rohn and in favor of the defendant in his case, Ragguette responded, "I was not there, so, I would not know how to answer that question." *Id.* at Tr. 232:2-Tr. 232:9.

Another client, Forrest Thomas ("Thomas"), also testified that he was in full support of having Judge Savage recused from his case. *Id.* at Tr. 271:13-Tr. 271:16. However, when asked to discuss which rulings demonstrated bias against him, Thomas said: "For one, I feel my case is being dragged on and on and on and on, and it hasn't been paid attention to." *Id.* at Tr: 282:10. When Judge Savage asked Thomas whether he knew that the Court had ruled in his favor on two motions, he said, "I [did] not know that." *Id.* at Tr. 283:14-Tr. 283:21.

Wallace and Mr. Mark Vitalis, each of whom related to [them] their observations of Judge Savage's conduct …." (Dkt. Nos. 579-14 at ¶ 1; 579-15 at ¶ 1; 579-16 at ¶ 1; 579-17 at ¶ 1; 579-20 at ¶ 1).

The record suggests that, armed with the apparent belief that Judge Savage was biased against her—and by extension her clients—and against the backdrop of having already pursued the avenues of written complaints and a meeting with Chief Judge Gómez, as well as a written complaint to Judge Savage himself, Attorney Rohn apparently believed that she had license to corral all of her clients who had cases before Judge Savage, expose them to negative reviews about the Judge from Vitalis and Wallace who had unfavorable results in their cases, and then seek recusal *en masse* on behalf of her clients. As creative as this unorthodox approach might appear to be in light of Attorney Rohn's apparent belief that the focus of Judge Savage's alleged bias was against *her*, it obviously raises significant issues, including the extent of informed decision-making by the clients, the respective roles played by the lawyers and the clients in the mass recusal process, and the admitted absence of any tangible evidence of alleged bias in the individual cases—except the *Vitalis* and *Wallace* cases—for which Judge Savage's recusal was being sought.[31]

The questionable nature of this mass recusal process for gathering evidence in support of the Recusal Motion was not lost on Attorney Rohn. Indeed, she apparently deemed it necessary to note in her Opposition to the Motion for Section 1927 Fees and in her testimony that she "intentionally removed herself" from discussions with clients regarding the Declarations, and left the affidavit work to others, to avoid seeming as if she "propagandized [the clients] into it." (Dkt.

---

[31] It is the mass recusal aspect of Attorney Rohn's attempted recusal of Judge Savage with which the Court takes issue. It is this aspect of the attempted recusal that brought into the matter individuals who had little or no contact with Judge Savage, thereby raising the concerns noted above.

No. 799 at 9; *Wallace*, Dkt. No. 456 at Tr. 28:8-Tr. 28:14). This attempt to absolve herself from responsibility for any "propagandization" rings particularly hollow when Attorney Rohn's own associates were the ones who admittedly were involved in the implementation of the process and the drafting of the Declarations.[32] (*Wallace,* Dkt. No. 456 at Tr. 238:14-Tr. 238:16; Tr. 239:3-Tr. 239:20). It is undeniable that this process was questionable, and no amount of purported "distance" from the process, by Attorney Rohn—who was lead counsel, partner, and owner of the firm— would negate the impact of her influence.

The Court has serious misgivings about Attorney Rohn's attempt at mass recusals. However, while the Court easily concludes that Attorney Rohn's approach to this aspect of her case for recusal was misguided, the Court finds—upon consideration of all the evidence—that "the record simply does not support the notion that [Attorney Rohn's] conduct was a result of bad faith rather than bad judgment." *Prentice v. OfficeMax N. Am., Inc.*, No. CV 1:13-56, 2021 WL 1187057, at *3 (D.V.I. Mar. 29, 2021). The Court remains mindful that the "bad faith requirement is … necessary to avoid chilling an attorney's ethical obligation to represent [her] client zealously." *LaSalle Nat. Bank*, 287 F.3d at 289 (citing *Ford*, 790 F.3d at 349) ("The uncritical imposition of attorneys' fees can have an undesirable chilling effect on an attorney's legitimate ethical obligation to represent his client zealously."). The Court also remains mindful of the restraint that courts must exercise in imposing Section 1927 sanctions. *See Antoniak*, 2020 WL 2539194, at *7 (citing *LaSalle Nat. Bank, LLC.*, 287 F.3d at 289).

---

[32] Greene testified that he, Attorney Rohn, and other members of the firm, discussed filing the Recusal Motion. (*Wallace,* Dkt. No. 456 at Tr. 242:10-Tr. 242:16). Greene further testified—not surprisingly—that Attorney Rohn directed him to get affidavits from certain clients. *Id.* at Tr. 243:20-Tr. 243:23.

The Sun Defendants' arguments do not alter the Court's conclusion. In addition to the bad faith arguments already addressed and rejected, the Sun Defendants argue that Attorney Rohn "concoct[ed] false affidavits" in support of recusal. (Dkt. No. 800 at 4). However, they fail to identify the "concocted fals[ity]." They do not claim falsity as to the source of the information in support of recusal—nor could they because the Client Declarations state clearly that the grounds for recusal were based on what the declarants had learned from Vitalis and Wallace regarding Judge Savage's alleged conduct. Similarly, support is lacking for any claimed bad faith falsity as to the subjective beliefs of alleged bias conveyed from Vitalis and Wallace to the other clients, or the subjective beliefs that the other clients allegedly developed based on the reports from Vitalis and Wallace. The fact that there was conflicting evidence on the issue of alleged bias and that the factfinder ruled against the existence of bias does not establish that the subjective beliefs were false, let alone that bad faith was at play.[33] And finally, while the Court has expressed its serious misgivings about the process by which Attorney Rohn secured the Client Declarations—which obviously informed her clients' perceptions of Judge Savage and his ability to be impartial—the Court has concluded that Attorney Rohn's actions in this regard do not rise to the level of bad faith. Accordingly, the Court finds that the Sun Defendants' claim that Attorney Rohn "concocted false affidavits" does not alter the Court's conclusion that bad faith has not been shown by clear and convincing evidence or otherwise.[34]

_____

[33] The same applies to Attorney Rohn's subjective beliefs of alleged bias in light of the evidence discussed above. Attorney Rohn's subjective beliefs of alleged bias—even if incorrect—are also supported by the fact that she made prior attempts to address the issue through her communications with Chief Judge Gómez and Judge Savage.

[34] To the extent that the Sun Defendants rely on the Recusal Opinion for their arguments regarding the alleged similarity and falsity of the Declarations, the Court finds that such arguments also do not bode well with regard to the Vitalis and Wallace Declarations. Those Declarations were not "strikingly similar," and moreover, Vitalis and Wallace had personal knowledge of the contents in the affidavits by virtue of their participation in their respective trials.

The Sun Defendants also argue that Attorney Rohn led her clients and other witnesses to testify falsely about Judge Savage's conduct during the recusal hearings. (Dkt. No. 795 at 7). In this regard, the Sun Defendants do not identify any specific testimony, but instead rely on the Recusal Opinion's conclusion, *inter alia*, that the record and "disinterested witnesses"[35] who observed the recusal hearing contradict the testimony of Attorney Rohn's clients. *Id.* However, there is no evidence that the clients in fact testified falsely about their own perceptions of Judge Savage's conduct or that they were led by Attorney Rohn to provide any false testimony. That others may have viewed or interpreted Judge Savage's conduct differently is not dispositive. Once again, conflicting testimony does not equate to bad faith.

In short, while the Court has serious concerns regarding the manner in which Attorney Rohn pursued a specific aspect of the Recusal Motion—namely the mass recusal process—the Court concludes that the Sun Defendants have failed to establish by clear and convincing evidence or otherwise that Attorney Rohn crossed the line into bad faith conduct. Accordingly, the Court finds that Section 1927 sanctions are not warranted against Attorney Rohn for the manner in which she pursued the Recusal Motion.

---

[35] In the Recusal Opinion, Judge Savage described certain witnesses as "disinterested," or as "[having] no stake in the outcome or "not [being] subject to influence by those who did." (Dkt. No. 793 at 20). Attorney Rohn's three co-counsel in the *James-Steele* matter and legal interns at the District Court were identified as falling into these categories. It is not clear to this Court that *any* of these witnesses were "disinterested." With regard to Attorney Rohn's three co-counsel, the evidence presented reveals that they were defending against allegations that they had communicated disparaging remarks and other comments allegedly made by Judge Savage. Further, a Court intern called to testify by the sitting Judge would likely be aligned with the interests of the Judge.

## IV.    CONCLUSION

The Court finds that the Sun Defendants have failed to carry their burden of establishing that Attorney Rohn's filing and pursuit of the Motion to Recuse warrants sanctions under 28 U.S.C. § 1927. Accordingly, the Court will deny the Sun Defendants' "28 U.S.C.S. § 1927 Motion for Fees and Costs Related to the Recusal Motion." (Dkt. No. 795).

An appropriate Order accompanies this Memorandum Opinion.

Date: September 25, 2024                    _____/s/_____
                                            WILMA A. LEWIS
                                            District Judge